# NEW ORLEANS NATIONAL BANKING ASSOCIATION *v.* ADAMS.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF LOUISIANA.

Argued October 31st, 1883.—Decided November 12th, 1883.

### *Louisiana—Mortgage.*

A executed a promissory note to B, another to C, and two others to D, and secured all by a mortgage of real estate in Louisiana. The notes to D were paid at maturity. Default being made by the others, B obtained a decree for foreclosure of the mortgage, and the property was sold to E. E, being unable to pay the purchase money, agreed in writing with the holders for time, and that the parties might enforce their judgments in case of non-payment, and that the original mortgages should remain in full force and effect, and that they were recognized as operating on the property to secure the debts. This agreement was recorded in the record of mortgages. E then conveyed to F, who mortgaged to G. The debt to B not being paid on the expiration of the extension, B instituted proceedings to foreclose, treating the agreement as a mortgage, and made G a party defendant. *Held,*

That the agreement was not a mortgage; that to constitute a mortgage there must be a present purpose to pledge the estate, and that there was no such purpose at the time of the agreement.

In equity. A firm doing business in Louisiana under the name of Tucker Brothers, on February 24th, 1860, made and delivered their promissory note of that date, for $5,000, payable February 15th, 1861, to the Bank of New Orleans, which afterwards, by virtue of the provisions of the "act to provide a national currency," etc., passed June 3d, 1864, became a national bank under the name of the New Orleans National

Banking Association. Tucker Brothers, on the same day, executed three other notes, for $5,000, one of them, payable to Godfrey Barnsley, falling due January 21st, 1861. To secure these four notes the makers executed a mortgage on a certain plantation in La Fourche Parish, Louisiana. Two of the notes were paid, but those given to the Bank of New Orleans and Barnsley were not paid at maturity. Thereupon the bank, having instituted a suit on the mortgage and the note held by it, on June 11th, 1867, obtained a decree of foreclosure against Tucker Brothers, by virtue of which, on September 7th, 1867, the mortgaged property was sold by the sheriff to one Albert N. Cummings for the price of $13,025 to satisfy said unpaid notes. Cummings being unable to pay the purchase money, it was agreed between him and the parties entitled to the proceeds of the sale that he should have time; whereupon Cummings, on September 7th, 1867, executed an agreement in writing, before J. K. Gourdain, a notary of the parish of La Fourche, in which he recited that he had not paid the purchase money of the plantation, and declared as follows:

"That he corresponded and compromised with the mortgage creditors hereinafter named, who agreed to give him time, without, however, impairing or novating the original claims, the right to enforce which they expressly reserved."

Cummings then by this same agreement stipulated that out of the price of the plantation he would pay to one Gaubert the sum of $1,851.10, on or before March 1st, 1861, he holding the first privilege on a part of the plantation for that amount; to Barnsley the sum of $4,904.40, on or before May 15th, 1870; and to the Bank of New Orleans $6,269.50, on or before May 1st, 1870; and that all these sums should bear interest at the rate of eight per cent. per annum after maturity till paid. The agreement then further declared as follows:

"It is understood, as above stated, that the parties hereto do not by those presents impair, affect, or novate their existing claims, and that in case of non-payment they will be entitled to enforce the judgments which may be held by them; and furthermore, that the original mortgages and privileges remain in full

force and effect, and are not hereby novated, and if need be, for the purpose of avoiding all doubts, the said privileges and mortgages are hereby recognized as operating on the said property in the proportions aforesaid, and to secure the debts stated as aforesaid with the rank above stated."

This agreement was duly recorded in the office of the recorder of mortgages for the parish of La Fourche on September 12th, 1867.

After the making of this agreement, Cummings, without having paid the sums the payment of which was promised thereby, sold the property to a Mrs. Tucker, who conveyed an undivided half interest to one Thomas J. Daunis, and Mrs. Tucker and Daunis then executed a mortgage on the same to John I. Adams & Co., to secure certain notes made by Daunis to said firm, after which Mrs. Tucker conveyed her undivided half of the property to Daunis. Subsequently the Bank of New Orleans, now become the New Orleans National Banking Association, assuming that the agreement entered into by Cummings before Gourdain, the notary, on September 7th, 1867, constituted a mortgage by which the balance found thereby to be due it from Cummings was secured, filed the bill in this case to foreclose the same. The bill made the firm of John I. Adams & Co. parties defendant, charging that said firm claimed to have a mortgage on the property covered by the alleged mortgage of the complainant, and that if said firm had any lien upon or interest in said premises it was subsequent to September 12th, 1867, the date of the inscription of the complainant's alleged mortgage.

To this bill John I. Adams & Co. filed a plea and answer, in which they set up that they, being holders of certain notes secured by a mortgage on the property described in the bill of complaint, instituted a certain suit upon the same against Thomas J. Daunis, in the district court sitting for the Parish of La Fourche, and obtained a writ of seizure and sale against said property, under and by virtue of which the same was seized by the sheriff, and in October, 1875, sold to John I. Adams, who claimed title thereto. They further alleged that

the agreement dated September 7th, 1867, set forth in the complainant's bill, was not a mortgage, and if it were, it was proscribed, because it had not been reinscribed within ten years from the date of the original inscription, as required by law.

Upon final hearing upon the pleadings and evidence, the circuit court dismissed the bill, and from its decree the complainant appealed.

*Mr. J. D. Rouse, Mr. William Grant*, and *Mr. Thomas L. Bayne* for appellants.

*Mr. Joseph P. Hornor*, and *Mr. W. S. Benedict* for appellees.

MR. JUSTICE WOODS delivered the opinion of the court.

It is conceded by counsel for complainant that the original mortgage made by Tucker Brothers, dated February 24th, 1860, and the decree rendered thereon in favor of the Bank of New Orleans by the District Court of the Parish of La Fourche, in June, 1867, were both extinguished by the sale of the mortgaged premises to Cummings on September 7th, 1867.

But complainant insists that the agreement made by Cummings on the day last named, with the Bank of New Orleans and other parties entitled to the proceeds of the sale, constituted a mortgage, and that the same having, on September 12th, 1867, been recorded in the office of the recorder of mortgages for the parish in which the lands were situate, secured them a lien and privilege on the premises from the date of said record.

We are of the opinion that this contention is not well founded. While it may be conceded that no precise form of words is necessary to constitute a mortgage, yet there must be a present purpose of the mortgagor to pledge his land for the payment of a sum of money, or the performance of some other act, or it cannot be construed to be a mortgage. *Wilcox* v. *Morris*, 1 Murphy, 116 (*S. C.* 3 Am. Dec. 678).

The agreement of September 7th, 1867, does not, on its face or by its terms, profess to create a lien in favor of the Bank of New Orleans on the premises in question, but it recites that the parties thereto do not thereby impair, affect, or novate their ex-

isting claims; that the original mortgages and privileges remain in full force and are recognized as operating on said property "to secure the debts stated as aforesaid with the rank above stated." The agreemen is not of doubtful meaning. Its purpose is to recognize the old mortgage made by Tucker Brothers in 1860 and to preserve its lien on the mortgaged premises from the date of its inscription.

The contention of complainant is not that the agreement is a mortgage to secure the notes made by Tucker Brothers, but to secure from Cummings the price which he bid for the premises at the sale made to satisfy the mortgage executed by Tucker Brothers. The bill of complainant is framed upon this theory. But the fault of this theory is, that the agreement does not profess, of its own force, to secure the money due from Cummings, but excludes the idea that such is its purpose by declaring that the original mortgages are recognized as operating on said property to secure the sums due from Cummings.

It is perfectly clear, therefore, that the agreement of September 7th, 1867, was not intended by the parties as a new mortgage to take effect at that date, but as a recognition of the old mortgage, and that its purpose was to keep it alive and to preserve its lien as of the date of its inscription.

In other words, Cumming, by this agreement undertakes to keep alive and in full force a mortgage made by another party after it had been foreclosed, the mortgaged property sold, and the mortgage and the decree rendered thereon extinguished. It was not in his power to do this. It follows that the effect of the agreement of Cummings of September 7th, 1867, is simply as a contract to pay the parties entitled to it the purchase money of the premises bought by him, and creates no lien or privilege on the premises sold. In other words, it is not a mortgage.

This view is supported by the decision of the Supreme Court of Louisiana in the case of *Adams* v. *Daunis*, 29 La. Ann. 315. This was the proceeding by Adams to cause to be erased the mortgages anterior to his purchase of the premises in question. The agreement of Cummings of September 7th, 1867, was put in evidence in that case, and this court held it to be no mortgage.

*The decree of the circuit court must be affirmed.*