(No. 13452.—Judgment affirmed.)

THE HIBERNIAN BANKING ASSOCIATION *et al.* Defendants in Error, *vs.* ELLA H. DAVIS *et al.* Plaintiffs in Error.

*Opinion filed December 7, 1920—Rehearing denied Feb. 2, 1921.*

1. MORTGAGES—*when executory agreement is sufficient to create equitable lien to secure debt.* An executory agreement in writing by which the contracting parties sufficiently indicate an intention to make particular property therein described a security for a debt or by which one party promises to convey or assign property as security creates an equitable lien, which is enforcible against the property so described.

2. SAME—*agreement to pay debt out of proceeds of sale does not create equitable mortgage.* An agreement to pay a debt out of the proceeds of a sale of property described in the agreement, if such a sale is made, is not sufficient to create an equitable mortgage upon the property.

3. SAME—*what is sufficient to create an equitable mortgage.* Express words are not required to create an equitable mortgage where the intention to create such a lien is evident, but it must clearly appear from the instrument, or the surrounding circumstances at the time of entering into the same, that the maker of the instrument intended the property therein described to be held, given or transferred as security for the obligation.

4. EQUITY—*equity cannot vary language of a contract.* Courts of equity have no power to substitute a different contract in the place of the one actually made but will presume that the interest of either party to the contract is expressed in the language thereof.

5. SAME—*when an equitable assignment does not arise.* An equitable assignment does not arise out of an agreement to pay a debt out of the proceeds of the sale of certain real estate where there is no actual appropriation of the fund, as such an assignment does not arise from a promise to pay out of a certain fund when such fund shall be created.

6. ACTIONS AND DEFENSES—*defense of usury is personal to the debtor.* The defense of usury is a right personal to the debtor and must be raised by him alone.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

ANDREW J. RYAN, JAMES G. CONDON, THOMAS J. CONDON, and IRVIN I. LIVINGSTON, for plaintiffs in error.

FRANK SCHOENFELD, and DAVID K. TONE, for defendant in error Arthur R. Jones.

Mr. JUSTICE STONE delivered the opinion of the court:

On August 1, 1917, J. Wallace Wakem filed a bill in the circuit court of Cook county to foreclose a first-lien trust deed upon the premises known as the Springer building, located in Chicago. Some time thereafter the Hibernian Banking Association, a defendant in error here, was substituted as sole complainant and Wakem was made defendant. The bank filed its amended and substituted bill of complaint, in which all junior mortgagees, lien claimants

and judgment creditors, including the plaintiffs in error and defendant in error Arthur R. Jones, were made parties defendant.  The issues were made up and the cause referred to the master.  Upon his report numerous exceptions were made, some of which were sustained by the chancellor, who entered a decree of foreclosure and sale of the premises, fixing the following liens in order of their priorities: (1) Hibernian Banking Association $356,035.89; (2) Union Bank of Chicago under trust deed to Charles E. Schlytern, trustee, $30,062.52; (3) Northern Trust Company, trustee under trust deed to John A. Farwell, trustee, $111,133.32. The correctness of the decree regarding these liens and their priority is not disputed.  The decree as regards those liens was affirmed by the Appellate Court, and the correctness of the judgment of the Appellate Court is not raised here, so these claims require no further consideration.  Nine other liens, amounting to $227,529.75, were decreed.  As liens 4 to 8, inclusive, are the only ones in controversy here, liens 9 to 13 need not be set out.  Liens 4 to 8 were as follows:

(4) Amount due plaintiffs in error German-American State Bank of Gridley, Ill.; City Bank of Portage, Wis.; Anna B. T. Overesch, as administratrix of the estate of Henry B. Overesch, deceased; Mercer Davis, individually; Ella H. Davis, David Davis and Mercer Davis, as executors of the estate of George Perrin Davis, deceased, and J. J. Kennell,—all of whom were found by the 24th paragraph of the decree to have a fourth lien on a portion of the property by reason of the instrument dated January 5, 1916, recorded January 13, 1916, (known as Kennell Exhibit No. 2,) which was decreed to be a fourth lien in the nature of an equitable mortgage securing sundry notes of Marguerite Warren Springer, $39,506.

(5) Amount due Ella H. Davis, David Davis and Mercer Davis, as executors of the estate of George Perrin Davis, deceased, who by the 25th paragraph of the decree were found to have a fifth lien upon the entire premises by rea-

son of the instrument dated January 31, 1916, (Davis Exhibit 42,) recorded February 2, 1916, which was decreed to be a fifth lien in the nature of an equitable mortgage securing sundry notes of Marguerite Warren Springer, $70,650.

(6) A mechanic's lien in favor of the Wheeling Corrugating Company to the amount of $1115.37.

(7) To defendant in error Arthur R. Jones a seventh lien by reason of the so-called Angus mechanic's lien assigned to Jones, to the amount of $33,708.02.

(8) To Arthur R. Jones, owner of notes secured by a trust deed to Frank Schoenfeld, trustee, executed and recorded some months after the recording of the two instruments above mentioned creating the fourth and fifth liens, respectively, $66,712.65.

The circuit court also found that payments amounting to $8702 should be credited on lien 8, which was a trust deed originally for $80,000, and that Mrs. Springer had paid the sum of $5000 usury, which, together with interest, was likewise deducted from the $80,000 mortgage lien.

The judgment of the Appellate Court eliminated liens 4 and 5 and held that liens 7 and 8 of Arthur R. Jones should become fifth and sixth liens, advancing lien 6 in favor of the Wheeling Corrugating Company to the position of fourth lien, and reversed the finding of the circuit court allowing credits for payment of $8702 on said $80,000 lien and of $5000 as usury, and held that said lien should be decreed for the full amount and interest, less payments made by Mrs. Springer.

Plaintiffs in error assign as error here, first, that the Appellate Court erred in reversing the decree of the circuit court and eliminating the amounts found due as fourth and fifth liens by the circuit court; second, that it erred in reversing the finding of the circuit court as to the defense of usury against Jones' trust deed for $80,000, it being contended by plaintiffs in error that the sum of $5000 had been paid to the defendant in error Jones by Mrs. Springer

for the loan of the $80,000. The third assignment of error is to the judgment of the Appellate Court reversing the finding and decree of the circuit court that there was due but $66,712.65 on the trust deed of Jones for $80,000.

It appears from the evidence in relation to the controverted matters here, that Marguerite Warren Springer, a widow who later married a man named Oliver, was the owner of the property known as the Springer building, on Canal street, in Chicago. Prior to September, 1915, she' had incumbered it with three mortgages aggregating the principal sum of $475,000. In the fall of 1915 she met E. L. Coyle and told him she was contemplating selling said premises and that they were worth in excess of a million and a half dollars; that she valued the building at two million dollars. In the early part of December, 1915, she entered into negotiations with Coyle for the purchase of a farm in Minnesota. These negotiations were finally completed on the 5th of January, and Mrs. Springer executed seventeen notes in amounts varying from $1000 to $4000, sixteen of which notes were offered in evidence in the case, totaling the principal amount of $35,428. These notes later came into the hands of various parties, plaintiffs in error in this suit. One of the notes for $2000 appears to have been surrendered to Mrs. Springer. These notes were referred to and covered by an instrument dated January 5, 1916, signed and sealed by Mrs. Springer, as follows:

"CHICAGO, ILLINOIS, *January 5, 1916.*

"The undersigned, Marguerite Warren Springer, of Chicago, Illinois, has this day executed her seventeen principal promissory notes, numbered 1 to 17, both inclusive, aggregating the principal of $35,428, payable to the order of herself and by her indorsed, with interest at six per cent per annum, payable at the Central Trust Company of Illinois, and she hereby declares that she is the owner of the said real estate premises known as 306-308-310-312-314-316 and 318 S. Canal street, Chicago, Cook county, Illinois, and hereby agrees with the holder or holders of said notes that in case or whenever she sells or otherwise disposes of said real estate premises she will cause the said notes to be paid out of the proceeds thereof.    MARGUERITE WARREN SPRINGER. (Seal)"

These notes, which with interest up to the time of the decree entered in the circuit court amounted to $39,506, were by the circuit court found to constitute a valid fourth lien in the nature of an equitable mortgage by reason of the writing of January 5. During the latter part of January, 1916, Mrs. Springer met Coyle in Bloomington, Illinois, and executed notes aggregating $60,000, three of the notes being for the sum of $10,000 each, one for $5000 and one for $25,000, which notes are held by plaintiffs in error Ella H. Davis and others and are the same notes as were by the decree of the circuit court herein given priority of lien as lien 5 and upon which the decree found due the sum of $70,650. At the same time these notes were delivered Mrs. Springer executed and acknowledged and delivered the following writing:

"BLOOMINGTON, ILLINOIS, *January 31, 1916.*

"The undersigned hereby declares and states that she has executed and delivered her five promissory notes bearing the date of January 28, 1916, payable in one year from date and bearing interest at the rate of six per cent (6) per annum, payable to the order of herself and by her indorsed in blank, as follows, [describing the notes,] all payable at the People's Bank at the city of Bloomington, Illinois; and she further declares and states that she owes the said sums of money so evidenced as aforesaid, and that she is the owner in fee simple of lots three (3), five (5), six (6), seven (7), eight (8) and the south fifteen (15) feet of lot four (4) and the north seven and one-half (7½) feet of lots nine (9) and ten (10), in block fifty-two (52), in the School Section addition to Chicago, in Cook county, Illinois, and she further declares that in case said premises so described as aforesaid are sold, then that said note heretofore described shall be paid out of the proceeds of the sale of said premises.    MARGUERITE WARREN SPRINGER."

Both of the instruments were filed in the recorder's office of Cook county. The Appellate Court held that these notes, with the instruments signed at the time of their execution, did not create an equitable lien in the nature of an equitable mortgage, as found by the decree of the circuit court, and that liens 4 and 5 should be eliminated from the decree awarding liens and foreclosure.

Plaintiffs in error urge that these two instruments created equitable liens or mortgages on the premises. The instrument of January 5, after showing execution of the notes and the ownership of the Canal street building, is as follows: "And hereby agrees with the holder or holders of said notes that in case or whenever she sells or otherwise disposes of said real estate premises she will cause the said notes to be paid out of the proceeds thereof." The instrument of January 31 contains similar language, as follows: "She further declares that in case said premises so described as aforesaid are sold, then that said notes heretofore described shall be paid out of the proceeds of the sale of said premises." A reading of this language is sufficient to show that it constitutes an agreement to pay a debt out of the proceeds of the sale of land. There is nothing in the language of these instruments from which it can be said that Mrs. Springer agreed to sell the property to pay the claims, nor can it be contended that she was bound to sell the property to pay these notes when due. The instruments were plainly agreements to pay out of the proceeds of a sale when she made such sale.

Plaintiffs in error contend, however, that it was the intention of the parties, as shown not only by the instruments but by the surrounding circumstances, to create a lien upon the property as distinguished from an agreement to apply the proceeds of a sale to pay a debt. The rule is that in every expressed executory agreement in writing by which contracting parties sufficiently indicate an intention to make a particular property therein described or identified a security for a debt or by which instrument the party promises to convey or assign property as security, such agreement creates an equitable lien upon the property so described or indicated which is enforcible against such property. (Pomeroy's Eq. Jur.—3d ed.—sec. 1235.) The instruments themselves do not disclose such intention, but, as we have said, disclose an agreement to apply the proceeds

of a sale to the payment of a debt. This is not sufficient to create an equitable mortgage upon the property itself. (Black on Mortgages, sec. 33; Jones on Liens,—3d ed.— sec. 32; *Hamilton* v. *Downer,* 152 Ill. 651; *Gibson* v. *Decius,* 82 id. 304; *Pinch* v. *Anthony,* 8 Allen, 536; *New Orleans National Banking Ass'n* v. *Adams,* 109 U. S. 211.) An examination of the record discloses no evidence of an intention on the part of Mrs. Springer to pledge the building as security for the notes. She had represented to Coyle that the building was for sale, and as to the notes included in lien 4, which were given for the purchase of a farm, Coyle had represented to her that he would sell the farm for her before the notes should become due. As to the notes included in lien 5, Mrs. Springer desired to get $15,-000 in cash. Coyle gave her his note for $45,000 and $15,000 in cash in exchange for her notes and promised that he would pay his note before hers became due. It is evident from the transaction of these parties that they were both expecting that Mrs. Springer would sell the building and that the notes should be paid out of the proceeds. Courts of equity have no power to substitute a different contract in the place of the one actually made, but will presume that the interest of either party to the contract is expressed in the language thereof. *Stone* v. *Palmer,* 166 Ill. 463; *Kerting* v. *Hilton,* 152 id. 658; *Carpenter* v. *Plagge,* 192 id. 82.

While it is true that it does not require express words to create an equitable mortgage where the intention to create such a lien is evident, yet it must clearly appear from the instrument or the surrounding circumstances at the time of entering into the same, that the maker of the instrument intended that the property therein described is to be held, given or transferred as security for the obligation. (3 Pomeroy's Eq. Jur.—3d ed.—sec. 1235.)

Plaintiffs in error urge that these instruments at least constitute an assignment of the fund arising from the sale

of the building. Counsel, however, lose sight of the difference between an actual assignment or appropriation of the fund and a mere promise or agreement to pay out of a certain fund when it shall be collected or recovered. It is only where there is an actual appropriation of the fund that an equitable assignment arises. It does not arise from a promise to pay out of a certain fund when such shall be created. *Story* v. *Hull,* 143 Ill. 506; *Cameron* v. *Boeger,* 200 Ill. 84.

We are of the opinion that the Appellate Court did not err in eliminating liens 4 and 5 from the decree as liens.

Plaintiffs in error's second assignment of error relates to the reversal by the Appellate Court of the decree of the circuit court concerning the defense of usury against Jones' mortgage for $80,000, constituting the eighth lien, and in directing that court to include in the decree the full amount of the unpaid principal and interest secured by Jones' mortgage, less payments made by Mrs. Springer thereon. It is a sufficient answer to this contention to say that neither Mrs. Springer nor her trustee in bankruptcy, F. M. McKey, in answering the original bill or amended or substitute bill, makes any claim of usury. The defense of usury is a right personal to the debtor and must be by him pleaded. If he is injured by usury it is for him to say whether such is so. He may choose to perform the contract and waive the defense of usury. No one else has the right to raise that defense. *Union Nat. Bank* v. *International Bank,* 123 Ill. 510; *Mason* v. *Pierce,* 142 id. 331; *Goodwin* v. *Bishop,* 145 id. 421; *Borrowers' Building Ass'n* v. *Ecklund,* 190 id. 257; *Home Building Ass'n* v. *McKay,* 217 id. 551; *National Life Ins. Co.* v. *Donovan,* 238 id. 283; Hurd's Stat. 1917, chap. 74, sec. 7.

Plaintiffs in error's third contention is that the Appellate Court erred in reversing the decree as to the item of $8702 found by the decree to have been paid on the Jones mortgage of $80,000. Jones testified that this credit was

295—35

given to her general account by agreement with Mrs. Springer, and that a portion of it was paid by him to William J. Angus for repairs to the building and that all was paid to satisfy claims against the building. It appears from his evidence that it was the original intention that these payments be applied on the notes belonging to Jones, and that because of lack of funds to meet the current expenses and claims on the building she agreed that all of said payments should be used for that purpose. Mrs. Springer, on the other hand, testified that the payments were to be made on the notes and were not to be used for current purposes. The evidence is by no means clear, but the question as to how these payments were made and whether there was an agreement as to their application is one of fact. The master saw and heard the witnesses, and we are not in a position to say that his conclusion of fact in regard to that matter was not correct. The master found, however, that the liens of judgment creditors should take priority over the Jones lien for the amount of $8702 paid by him. The master evidently found that though paid on the $80,000 claim, these amounts were later, by agreement with Mrs. Springer, charged to her on account of the payment of certain claims against the building made by Jones, and that while he was entitled to be subrogated to the lien rights of those whom he had thus paid, such lien claims were junior to those of judgment creditors and this claim of Jones should be made subject to the liens of such judgment creditors. It was evidently the direction of the Appellate Court in remanding the cause that the claim of Jones should constitute a lien junior to those of judgment creditors and deducted from the $80,000 trust deed lien. In this we find no error.

From an examination of the entire record we are of the opinion that there is no error in the judgment of the Appellate Court, and that judgment will be affirmed.

*Judgment affirmed.*