Lucius B. Phelps, Appellee, v. Oak Hills Golf Club and
Charles A. Phelps, Appellants.

Gen. No. 35,738.

Opinion filed February 8, 1933.

CHARLES A. PHELPS and CHARLES F. GRIMES, for appellants.

ROBERT J. FOLONIE and ARTHUR A. BASSE, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

The complainant filed a bill in equity against the defendants to establish and foreclose an equitable lien upon the property of the Oak Hills Golf Club, a corporation. This case was referred to a master, whose report was thereafter confirmed by the court, and a decree was entered granting the relief prayed for in the bill of complaint. From this decree entered by the court, the defendants are in this court upon an appeal.

The facts are, in substance, that in 1920, the complainant loaned $17,500 to one Harry Newman, and received as evidence of the debt Newman's collateral note signed by him for the sum of $19,250, due in 60 days. The collateral consisted of a certain $10,000 promissory note signed by F. A. and Snow E. Williams, indorsed in blank, and an assignment of Newman's half interest in the rental of two leases, which rentals, as provided in the leases, were being collected by Hall & Ellis, as agents. When the collateral note signed by Harry Newman became due on February 4, 1921, and was not paid at maturity, the complainant placed the note for collection with the defendant Charles A. Phelps, his brother, as his attorney.

In July, 1921, Newman and his wife conveyed a certain farm property to Charles A. Phelps by warranty deed, subject to certain incumbrances, and at that time also delivered to Charles A. Phelps a bill of sale covering personal property then located on the farm. When Charles A. Phelps was retained as attorney to collect the note for complainant he advised Newman that he, Phelps, proposed to put the same in judgment and levy upon 70 acres of farm land, to which Newman then had title. Thereupon Newman suggested that instead of a levy, which would leave his wife's interests intact, that he execute a deed joined in by his wife, and convey the title to the farm above mentioned, to Charles A. Phelps. A deed was executed and after conveyance, Phelps entered into possession of the property.

Before the conveyance of the title to the farm to Charles A. Phelps, one of the defendants, he, Phelps, communicated Newman's offer to the complainant, and the complainant together with Charles A. Phelps, inspected the property.

The liens against the farm property at that time were:

First Mortgage, due February 18, 1924....$11,000.00
Second mortgage in default............... 11,500.00
Third mortgage, due May 7, 1922.......... 2,200.00
Rohe Lumber Company mechanic's lien
    claim filed May 17, 1921............... 1,635.60
Harris and Rogers judgment and costs, ren-
    dered June 7, 1921. Execution thereon
    delivered to the sheriff on July 15, 1921.. 7,800.00

                                        $34,135.60

There is evidence that the complainant objected to the title to this farm property being in Charles A. Phelps. However, Newman conveyed the property to Charles A. Phelps, who did not pay anything as a consideration for the conveyance and had no legal or equitable interest, but held the conveyance to secure the payment of Newman's note held by the complainant. Charles A. Phelps admitted in writing that he held title as trustee for the complainant. It also appears from the evidence that at the time of the conveyance of title by Newman he, Newman, was to receive the balance, if any, of the proceeds in the event of a sale of the property, after deducting the necessary amounts to pay prior liens which Newman had to discharge, as well as the claim of the complainant by virtue of Newman's note. The complainant thereafter advanced certain moneys to Charles A. Phelps to defray certain running expenses, and after some time determined to and did change lawyers, the complainant being represented by John L. Davidson. Charles A. Phelps failed to sell the Newman farm until he finally promoted, together with Lee B. Vastine and David B. McIntosh, the Oak Hills Golf Club, which was incorporated in Illinois on October 19, 1922. After the organization of this golf club, a deal was consum-

mated whereby the Newman farm and an adjoining tract of land, which consisted altogether of approximately 139 acres, was conveyed to the Oak Hills Golf Club by Charles A. Phelps. The consideration for the conveyance of the Newman farm was $75,000.

In this connection it is interesting to note that the defendant representing the complainant as attorney, investigated the desirability of making the loan to Newman by the complainant, and met Lee Vastine, who was interested in the promotion of the loan. After the conveyance of the title to the land, the Oak Hills Golf Club took possession of the property, and the consideration for the conveyance by Charles A. Phelps was paid for in cash, except $15,000; that Lee Vastine, Charles A. Phelps, and David McIntosh, who were the organizers of the Golf Club, were elected as officers, Lee Vastine, president, Charles A. Phelps, treasurer, and David McIntosh a director; that stock issued by the club was received by the officers named for services rendered in organizing the club; that prior to the date of the deed, May 4, 1923, to the Oak Hills Golf Club, by Charles A. Phelps, Lee Vastine, one of the incorporators, president and a director, and David McIntosh, also a director, had knowledge that the deed to Charles A. Phelps from Newman was to secure the payment of a $19,250 note held by the complainant, and that the club had further notice in the form of a letter dated January 12, 1924, addressed to John E. Reardon, president, of the complainant's claim that the deed to Charles A. Phelps from Newman was to secure the complainant's claim against Newman for the amount due on Newman's note, and that Charles A. Phelps held title as trustee, for complainant, to secure such payment; and that the only personal interest Charles A. Phelps had was the amount due for his services rendered in the matter.

It also appears from the evidence that on November 1, 1923, the Oak Hills Golf Club negotiated a loan of $75,000 evidenced by bonds bearing interest, the payment of which was secured by a trust deed, by the terms of which the club conveyed the property in question to the Chicago Title & Trust Company, which was executed and delivered by Lee Vastine, its president, and Charles A. Phelps, its secretary. The record is not altogether clear as to the date of the payments by the Oak Hills Golf Club of the consideration for said warranty deed from Charles A. Phelps, except as to the check of $13,339.95, dated November 19, 1924. It appears that there was due the complainant on December 5, 1928, at the time of the entry of the decree, on account of the said Newman loan, a total of $13,927.10.

Defendant contends that Harry Newman conveyed the farm and personal property to Charles A. Phelps as trustee, with power to sell and with directions to apply the funds to satisfy the liens upon the property, as well as the amount due the complainant upon the Newman note, and that the complainant acquired no lien upon the property, but only a contingent interest in the proceeds of the sale of the Newman farm.

The theory of equitable liens has its foundation in contracts, express or implied, and every agreement between the contracting parties which sufficiently indicates an intention to make some particular property, real or personal, a security for a debt; or the property is transferred as a security, creates an equitable lien, which is enforceable against the property conveyed. This rule, however, is not limited to express contracts, but in addition equity raises similar liens without agreement therefor between the parties, based either upon general considerations of justice or upon the particular equitable principle that he who seeks the aid of equity in enforcing some claim must himself do equity. *Oppenheimer v. Szulerecki,* 297 Ill. 81.

At the time of the conveyance by Newman to the defendant Charles A. Phelps, he, Phelps, had no interest other than to collect the moneys due his client upon the Newman note, and to protect the interests of the complainant. It was clearly the intention of the parties to this transaction that the land held by Charles A. Phelps was to secure the payment of complainant's note, together with the liens then upon the property, and the defendant Charles A. Phelps was bound by this understanding, and it would seem to the court that it is highly improper for this defendant at this time to take advantage of his position and maintain that the complainant acquired no lien on the land, but only a contingent interest in the proceeds of the sale of the land.

The contention by the defendants that the complainant acquired no lien upon the land, but only a contingent interest in the proceeds of the sale of the land is not borne out by the facts in this case. Newman, the owner, conveyed the land to Charles A. Phelps to secure the payment of the amount due the complainant. In *Hibernian Banking Ass'n v. Davis*, 295 Ill. 537, the court held that where property is not conveyed, but is held by the owner upon an agreement that he will apply the moneys received upon a sale in payment of the complainant's debt, the complainant is not entitled to an equitable lien upon the property in question. The Supreme Court said however:

"While it is true that it does not require express words to create an equitable mortgage where the intention to create such a lien is evident, yet it must clearly appear from the instrument or the surrounding circumstances at the time of entering into the same, that the maker of the instrument intended that the property therein described is to be held, given or transferred as security for the obligation. (3 Pomeroy's Eq. Jur.—3d. Ed.—sec. 1235.)"

The question, of course, is largely solved by the intention of the parties, to be gathered from the understanding at the time of the conveyance by deed to Charles A. Phelps, and it is our opinion, from the evidence and the transaction which took place at the time of the conveyance by Newman to Charles A. Phelps, that the land was to be held as a security and to be sold for the payment of the liens upon the property, together with the amount due the complainant upon the Newman note.

There is one question in this case that is important: Did the Oak Hills Golf Club have knowledge of the conditions upon which Charles A. Phelps held title to the Newman farm?

The evidence is convincing that Charles A. Phelps had no interest in the land. The only interest that he had was that he was to be paid for his services as attorney for the complainant and reimbursed for the money he expended in the management of this property. When he promoted and organized the Golf Club he clearly understood that the title to the Newman farm was to be held by him to secure the payment of the complainant's claim. With this knowledge he conveyed the land to the Golf Club and took possession as an officer. Vastine, the president, and McIntosh, a director, had the same knowledge at that time.

Again, on June 12, 1924, before all of the purchase money due from the Club was used, John E. Reardon, the president, received a letter from the complainant, through his attorney, notifying the club of the claim of the complainant, and from Reardon's testimony it appears that he did discuss the complainant's claim with Charles A. Phelps, a defendant, and was given to understand that it was "none of his (Reardon's) business." Phelps was the treasurer and general manager of the club, taking care of the buildings, the collection and disbursement of the club's money, and also

representing the club in all matters requiring the services of an attorney.

It is further contended that the complainant is estopped to assert any claim upon the title because, by the acts of the complainant, Charles A. Phelps was warranted in conveying title to the Golf Club. We have considered the steps taken by the complainant as they appear in evidence, and it would seem that he was concerned about the satisfaction of his claim. Charles A. Phelps, defendant, had title to the Newman land, and his acts throughout indicate an effort on his part to consider his interest and not that of the complainant.

The complainant did not mislead the defendants in any respect, nor did any act of this complainant cause the club to change its position, to its detriment. Rather, it appears from the evidence that the defendant Phelps induced the complainant to dismiss a pending bill to establish his lien against the land in the possession of the defendants. The dismissal of this bill was induced by the defendant Golf Club through its agent Phelps' promise to pay the claim of the complainant. However, after the bill was dismissed the claim was not satisfied and the proceeds of a check which was in the possession of the agent of the Golf Club for the sum of $13,339.95 was retained by the defendant club, and it appears from the evidence that its agent Charles A. Phelps was instructed at the time of the issuance of the check that he could dispose of this amount at his will. This upon its face would indicate a sharp practice indulged in by the defendant club through its agent.

The complainant acted in good faith and is entitled to the relief prayed for in the bill of complaint.

The last contention of the defendant to be considered by this court is, Did the chancellor err in refusing to allow the Oak Hills Golf Club to amend its

answer so as to plead usury? The record discloses that this suit has been pending since February, 1925; that answers of the defendants were filed in April, 1925, hearings were had before the master, and the master's report was prepared in 1930. We believe that the court was justified in refusing to permit the Oak Hills Golf Club to so amend its answer because of the lapse of time, but there is a further ground which justified the court in refusing to permit the amendment to be filed by the Oak Hills Golf Club, and that is, that the defense of usury is a right personal to the debtor and must be pleaded by him.

If Newman was injured by usury, it was for him to say whether such was so. Newman could choose to perform the contract and waive the defense of usury. No one else had the right to raise that defense. *Hibernian Banking Ass'n v. Davis, supra.*

After a consideration of the evidence, we find that the chancellor was fully justified in entering the decree in this case finding that the complainant was entitled to an equitable lien upon the premises in question, subject to the lien of the trust deed securing the payment of the bonds aggregating the sum of $74,000, and that the decree is sustained by the proof and the law.

The decree is accordingly affirmed.

*Decree affirmed.*

WILSON, P. J., and HALL, J., concur.