******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

BEAR, J., dissenting. The plaintiff, Manufacturers and Traders Trust Company, also known as M&T Bank (M& T Bank),[1] successor in interest to the named plaintiff JPMorgan Chase Bank, National Association (JPMorgan Chase), appeals from the judgment of the trial court rendered in favor of the defendant Theresa Virgulak.[2] On appeal, the plaintiff claims that the trial court abused its discretion by (1) failing to consider the plaintiff's foreclosure claim against the defendant as a stand-alone claim independent from its other causes of action and, thus, failing to grant the plaintiff the equitable remedy of foreclosure to which it was entitled on the facts of this case, (2) declining to reform the note and/or mortgage deed at issue in this case, (3) denying its motion to amend its responses to the defendant's requests for admission, (4) concluding that the plaintiff's admissions limited its recovery under its unjust enrichment count, and (5) denying the plaintiff's motion for reargument. The majority disagrees with the plaintiff as to all of its claims and concludes that the court did not abuse its discretion in refusing to consider those claims. I respectfully disagree with the majority's disposition of this case and, rather, would reverse the judgment of the court on the ground that the court both abused its discretion and erred in failing to properly consider the plaintiff's stand-alone foreclosure claim. The court should have allowed the plaintiff to proceed with its foreclosure claim.

The plaintiff argues that the court abused its discretion in failing to consider its foreclosure claim and, therefore, erred in failing to exercise its equitable powers to render a judgment of foreclosure against the defendant. Specifically, plaintiff asserts that, even without reformation of the note or mortgage, the court had discretion to consider its foreclosure claim and, in light of the evidence presented at trial, abused that discretion. The plaintiff also argues that it is entitled to proceed with the foreclosure complaint as a matter of law.

The following facts are evident from the record and are undisputed. The defendant and her husband, Robert J. Virgulak (Robert), on this and prior occasions, had a practice of borrowing money from banks whereby Robert would execute a note for the amount to be borrowed, and the defendant would execute a mortgage as security for the note. In this case, there is no dispute that Robert, on December 11, 2006, executed a note to JPMorgan Chase in the amount of $533,000 and that he received and expended that $533,000 for the benefit of himself and the defendant. There is also no dispute that on December 11, 2006, the defendant signed an open-end mortgage deed to JPMorgan Chase for the defen-

dant's real property known as 14 Bayne Court, Norwalk (real property), and that she initialed each page of that fifteen page form mortgage document, which was recorded on the Norwalk land records. The defendant was listed in the form mortgage document as the "Borrower . . . THERESA VIRGULAK, MARRIED," a reference to her marriage to Robert, the maker of the note. The note, however, incorrectly was described in the mortgage document as being signed by the defendant, instead of Robert. Consistently with the note signed by Robert, the mortgage referred to a note dated December 11, 2006, in the amount of $533,000.

On December 11, 2016, the defendant also signed a U.S. Department of Housing and Urban Development form, RESPA HUD1A (HUD-1), that included the following disbursements to pay off encumbrances on the defendant's real property: (1) to M&T Mortgage Corporation in the amount of $14,889.38; (2) to Wachovia Bank, N. A., in the amount of $240,993.18; (3) to The Greater Norwalk Area Credit Union, Inc., in the amount of $18,285.47; (4) to Bank of America in the amount of $27,921.82; (5) to Wachovia in the amount of $27,647.94; (6) to Chase in the amount of $16,950.47; (7) to the Norwalk Tax Collector in the amount of $4640; and (8) to James P. Murphy & Assoc. in the amount of $1274 for an unpaid insurance premium. The encumbrances on the defendant's real property that were paid off for her benefit at the closing thus totaled approximately $370,000.

In rejecting the plaintiff's foreclosure claim, the majority looks to the trial court's memorandum of decision and the plaintiff's pleadings filed thereafter and concludes that the court properly exercised its discretion in determining that the plaintiff's claim was inadequately briefed and "without merit." Moreover, the majority, relying on our well established mortgage foreclosure case law that "the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that the conditions precedent to foreclosure . . . have been satisfied;" *Bank of America, N.A.* v. *Gonzalez*, 187 Conn. App. 511, 514, 202 A.3d 1092 (2019); concludes that because the defendant did not sign the promissory note and the mortgage did not refer to any obligation for which the defendant was legally responsible, "the subject mortgage, as executed, was a nullity because it purported to secure a nonexistent debt." I respectfully disagree with the majority's conclusion.

When the essence of a transaction is clear, as it is in this case, a court must look to its substance, instead of relying upon errors of form, to determine its enforceability against a party to it. As our Supreme Court observed, "[e]quity always looks to the substance of a transaction and not to mere form . . . and seeks to

prevent injustice." (Citation omitted; internal quotation marks omitted.) *Natural Harmony, Inc.* v. *Normand*, 211 Conn. 145, 149, 558 A.2d 231 (1989). Accordingly, "[t]he governing motive of equity in the administration of its remedial system is to grant full relief, and to adjust in the one suit the rights and duties of all the parties, which really grow out of or are connected with the subject-matter of that suit." (Internal quotation marks omitted.) *Maruca* v. *Phillips*, 139 Conn. 79, 82–83, 90 A.2d 159 (1952). "In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Citation omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 417, 853 A.2d 497 (2004); see also *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 216 A.2d 814 (1966).

"[F]oreclosure is peculiarly an equitable action, and the court may entertain such questions as are necessary to be determined in order that complete justice may be done." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 170–71, 659 A.2d 138 (1995). "[T]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . For that reason, equitable remedies are not bound by formula but are molded to the needs of justice." (Citations omitted; internal quotation marks omitted.) *McKeever* v. *Fiore*, 78 Conn. App. 783, 788–89, 829 A.2d 846 (2003) (concluding "that in light of the [trial] court's inherent equitable powers in a foreclosure action, the court did not improperly consider the equitable doctrine of unclean hands without it being specifically pleaded").

"While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion . . . *this presupposes that the trial court did in fact exercise its discretion.* . . . Where . . . the trial court is properly called upon to exercise its discretion, its failure to do so is error." (Citation omitted; emphasis altered; internal quotation marks omitted.) *Higgins* v. *Karp*, 243 Conn. 495, 504, 706 A.2d 1 (1998); *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986).

Additionally, a court must apply common sense in analyzing and interpreting all relevant documents and the entire transaction. See *Gazo* v. *Stamford*, 255 Conn. 245, 266, 765 A.2d 505 (2001) ("[c]ommon sense also

informs us that the plaintiff's contract claim is in reality his negligence claim cloaked in contract garb"); see also *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985) ("[i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom"); *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 697 A.2d 1137 (1997) ("[e]ven if we were to assume, without deciding, that the contract's failure to refer to subsection (g) meant that the entire statute applies, the Appellate Court's conclusion that the defendant could not dispose of vehicles that were not specifically designated by [General Statutes] § 14-150 is contrary to common sense and to a plain reading of the contract as a whole"); *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 138, 475 A.2d 305 (1984) (contract must be given common sense interpretation, and in construing contract, court must view written document as expression of parties' intent).

In the present case, the first count of the plaintiff's amended complaint unambiguously sets forth a claim for foreclosure of a valid mortgage, independent of any claim for reformation. In connection with the defendant's motion for summary judgment, the court, *Hon. Kevin Tierney*, judge trial referee, in its memorandum of decision denying that motion, framed the issue as whether a foreclosure action could be maintained "by a lender who has a mortgage deed executed by a named defendant, the sole property owner who has not executed the note." At trial, the plaintiff's counsel and the court, *Tobin, J.*, further discussed this issue:

"[The Plaintiff's Counsel]: [T]*his is a three count complaint for foreclosure, equitable reformation of the note and unjust enrichment.* We have essentially stipulated by virtue of our stipulation of facts that all the prerequisites to foreclosure have been satisfied, but there is a legal issue raised by the defendants that remains. . . . The defendant's contention is that the foreclosure action is not valid by virtue of the fact that the note does not secure the mortgage because two different parties executed those documents . . .

\* \* \*

"The Court: Okay. Now, I can understand how you might prevail if you're—you've got your equitable remedy in the form of reformation of the note, and I understand what you're seeking is to have the [defendant] added as a maker of the note, and that would make the recitations of the mortgage deed accurate. . . . But it—*it strikes me that the manner in which you introduced your case you suggested that you believe the plaintiff can prevail in this case even if it is not successful in demonstrating the requisites to have the note reformed*?"

"[The Plaintiff's Counsel]: That's correct, Your Honor. *We are proceeding out of three different* [*bases*] *essen-*

*tially. We believe that foreclosure itself is appropriate.* Now we have added the other causes of action, *but we believe that we can foreclose under these circumstances regardless of those causes of action* to answer Your Honor's question." (Emphasis added.)

The plaintiff asserted, as well, in its posttrial brief "that, under both the law and equitably, it is entitled to foreclosure of the mortgage in issue and equitable relief." In support of its claim for foreclosure, the plaintiff argued that it had established a prima facie case for foreclosure, and that "the only issue remaining in this matter results from a technical reading of the mortgage, which, based on a literal reading of its terms, describes [the defendant] as the 'Borrower.' " The plaintiff concluded by requesting that the trial court enter "an order of judgment of foreclosure in its favor or, in the alternative, order appropriate equitable relief."

It is thus clear that the plaintiff adequately articulated to the court the merits of his claim for foreclosure. Rather than substantively addressing this claim, however, the court summarily rejected it on the basis that "the plaintiff does not argue that the law would permit the plaintiff to foreclose a mortgage . . . without first obtaining equitable reformation of the mortgage note and/or deed." In reaching this conclusion, the court erred both as a matter of law and as a matter of equity. It did not consider the plaintiff's adequately argued and briefed foreclosure claim, including whether the plaintiff was entitled to any remedies upon the default of the obligor on the underlying debt. The majority's conclusion that the court did exercise its discretion by explaining that "the plaintiff's claim was inadequately briefed and was unsupported by any citation to support its contention" compounds this error and runs counter to the inherently equitable nature of foreclosure actions. This conclusion is also inconsistent with our law that requires a court to be guided by the substance of the transaction, in the present case the note and the mortgage, which although signed separately, constituted one unified transaction through the joint and concerted actions, with full knowledge of the consequences, of the defendant and Robert, and resulted in them obtaining $533,000 from JPMorgan Chase while also providing security for repayment of the loan.[3] Any limitation or defect in the mortgage form that did not correctly describe the defendant or the maker of the note is in the nature of a technical defect, or a scrivener's or otherwise harmless error; see, e. g., *Boisvert* v. *Gavis*, 332 Conn. 115, 122 n.4, 210 A.3d 1 (2019); *Do* v. *Commissioner of Motor Vehicles*, 330 Conn. 651, 665, 200 A.3d 681 (2019); and as a matter of law cannot bar the enforcement of the valid mortgage, the terms of which were known and agreed to by both parties to the document; see, e.g., *Wiley* v. *London & Lancashire Fire Ins. Co.*, 89 Conn. 35, 43, 92 A. 678 (1914); where JPMorgan Chase's disbursement of $533,000 to or for

the benefit of the defendant and Robert is far more than sufficient consideration for Robert's execution of the note and the defendant's agreement to and execution of the mortgage document.

In the context of this case, therefore, I respectfully disagree with the majority's conclusion that, absent a reformation of the mortgage or note, the court is precluded from foreclosing on the mortgage. Under the particular circumstances of this case, the defendant's failure to sign the promissory note executed by Robert did not protect her from a foreclosure of the valid security interest she had granted to JPMorgan Chase in the real property. The trial court and the majority erroneously have concluded that the mortgage fails to expressly refer to any obligation for which the defendant is legally responsible. The appropriate approach in this case is to view the note and mortgage as elements of one transaction; see, e. g., *Wiley* v. *London & Lancashire Fire Ins. Co.*, supra, 89 Conn. 43–44; or alternatively, to view the mortgage from the defendant to JPMorgan Chase as a grant of security, in the nature of a guarantee, for the repayment of Robert's note to JPMorgan Chase.

There are certain fundamental principles underlying both the right of a party to initiate and prosecute a foreclosure action and an action on a guarantee, whether it is secured or unsecured: "Upon a mortgagor's default on an underlying obligation, the mortgagee is entitled to pursue various remedies against the mortgagor including its remedy at law for the amount due on the note, its remedy in equity to foreclose on the mortgage, or both remedies in one consolidated cause of action. . . . To understand who are proper parties when a mortgagee pursues the remedy of foreclosure, one must recognize that Connecticut follows the title theory of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property. . . . As the holder of equitable title, also called the equity of redemption, the mortgagor . . . has the right to redeem the legal title on the performance of certain conditions contained within the mortgage instrument. . . . The purpose of the foreclosure is to extinguish the mortgagor's equitable right of redemption that he retained when he granted legal title to his property to the mortgagee following the execution of the mortgage. . . .

"Unlike the equitable nature and aims of foreclosure, a claim on the note at law is grounded in contract, and is enforceable as between the parties to that contract—the debtor and the creditor . . . . Thus, any deficiency judgment sought in connection with the foreclosure arises from the contractual relationship between the parties to the promissory note.

"When payment of a promissory note secured by a

mortgage is further protected by a separate guarantee, in addition to the aforementioned potential remedies against the mortgagor, the mortgagee may pursue a claim against the guarantors to recover any of the unpaid debt of the mortgagor. . . . A guarantee is a promise to answer for another's debt, default or failure to perform a contractual obligation. . . . As a contractual obligation separate from the contractual agreement between the lender and borrower, a guarantee imports the existence of two different obligations: the obligation of the borrower and the obligation of the guarantor." (Citations omitted; internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 675, 94 A.3d 622 (2014).

It is well established that "a contract of guarant[ee] creates a secondary liability" and, therefore, "a guarantor is not bound to do what the principal has contracted to do but only to answer for the consequences of the default of the principal." (Footnote omitted.) 23 S. Williston, Contracts (4th Ed. 2019) § 61:2; see also *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, supra, 312 Conn. 676 ("a guarantor's liability does not arise from the debt or other obligation secured by the mortgage; rather, it flows from the separate and distinct obligation incurred under the guarantee contract"); *Carpenter* v. *Thompson*, 66 Conn. 457, 464, 34 A. 105 (1895) ("[t]he contract of the guarantor is his own separate undertaking in which the principal does not join" [internal quotation marks omitted]). As such, it has been "recognized that, in the absence of a statute expressly pertaining to guarantors, such secondary obligors are not proper parties to a claim seeking the foreclosure of a mortgage and their obligations are not limited by the extinguishment of the mortgagor's rights and obligations." *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties*, supra, 677. In *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties*, supra, 682–83, our Supreme Court reversed the judgment of this court and concluded that the judgment of strict foreclosure that had been rendered against the mortgagor had no effect on the plaintiff's ability to recover damages from the guarantors for the remaining unpaid debt. Although our Supreme Court determined that the plaintiff mortgagee could not properly make the guarantors parties to the foreclosure claim because they were not parties to the mortgage or the note, it concluded that the guarantors' obligation that separately arose under the guarantee could still be enforced. Id. In the present case, the defendant provided security in connection with, but only to the extent of, her equity in the real property.

The principle that a guarantor may be held liable for an unpaid debt on a promissory note applies to the particular factual circumstances of the present case. The mortgage document signed by the defendant makes specific reference to the terms of the underlying note, demonstrating her intent that the mortgage operate as

her promise to pay in the event of a default by Robert on the terms of the note.[4] Specifically, the document transfers the "Borrower's" rights in the real property to JPMorgan Chase, and its successors in interest. Moreover, the mortgage describes JPMorgan Chase as the "lender" and "mortgagee," which it was at the initiation of the mortgage from the defendant, and sets forth the exact amount of the note obligation. Not only is the mortgage dated the same date as the note, but it also defines itself as the "Security Instrument." Further evidence that the mortgage was intended to provide the plaintiff with a security interest in the defendant's property in the event Robert failed to make payments on the note is contained in the following documents signed by the defendant: (1) the HUD-1 form; (2) the Transfer of Servicing Disclosure Statement where she confirmed that her acknowledgement of that document was part of the mortgage loan application; (3) the Federal Truth in Lending Statement containing details of the loan including that "[you] are giving a security interest in certain real property located at 14 Bayne Court, Norwalk;" and (4) the Notice of Right to Cancel, that set forth, inter alia: "You are entering into a transaction that will result in a mortgage/security interest in your home. . . . If you cancel the transaction, the mortgage/security interest is also cancelled."

The present case is distinguishable from *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties*, supra, 312 Conn. 662, in that the defendant is the mortgagor of the real property, as well as the guarantor of Robert's note. Nevertheless, this distinction, in addition to the references in the mortgage, the note, and the ancillary documents that demonstrate that the note and mortgage, although signed separately by each party, were designed to be part of the same transaction, supports the position that the defendant, as mortgagor and guarantor, is the proper party defendant in the underlying foreclosure action.

The majority relies on the defendant's failure to sign the promissory note executed by her husband and the mortgage's identification of her as the borrower on the note for the conclusion that without reformation,[5] the mortgage secured a nonexistent debt and, thus, as executed, was a nullity. I disagree and, instead, note that strict compliance with a specific form, statutory or otherwise, is not necessary for the execution of a valid mortgage between parties to a transaction. See *New Orleans National Banking Assn.* v. *Adams*, 109 U.S. 211, 214, 3 S. Ct. 161, 27 L. Ed. 910 (1883) ("no precise form of words is necessary to constitute a mortgage"); *Harding* v. *Trenor*, 157 F. Supp. 350, 356 (D.N.D. 1957) (standard form for mortgage prescribed by statute "neither mandatory nor exclusive"); *Wolf* v. *Schumacher*, 477 N.W.2d 827, 828 (N.D. 1991) (compliance with standard form for mortgage "not necessary to create a valid mortgage between the parties to a transaction"). Rather,

the validity of a mortgage rests on (1) whether there is some evidence that the transaction was intended as a mortgage in consideration for some debt; see *New Orleans National Banking Assn.* v. *Adams*, supra, 214 (to constitute mortgage, "there must be a present purpose of the mortgagor to pledge his land for the payment of a sum of money, or the performance of some other act"), and *Wolf* v. *Schumacher*, supra, 829 (documentary evidence and testimony established that transaction between parties was intended as mortgage and could be enforced as such); and (2) whether the mortgage "provides reasonable notice to third parties of the obligation that is secured." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Esposito*, 210 Conn. 221, 227, 554 A.2d 735 (1989).

Furthermore, a mortgage that is not properly executed or contains technical defects may be enforced through equity. See *Ketchum* v. *St. Louis*, 101 U.S. 306, 317, 25 L. Ed. 999 (1879) ("It is well stated that a party may, by express agreement, create a charge or claim in the nature of a lien on real as well as on personal property of which he is the owner or in possession, and that equity will establish and enforce such charge or claim . . . . In addition to these formal instruments which are properly entitled to the designation of mortgages, deeds, and contracts, which are wanting in one or both of these characteristics of a common-law mortgage, are often used by parties for the purpose of pledging real property, or some interest in it, as security for a debt or obligation, and with the intention that they shall have effect as mortgages. Equity comes to the aid of the parties in such cases, and gives effect to their intentions." [Citation omitted; internal quotation marks omitted.]); *Union Planters Bank, N.A.* v. *New York*, 988 So. 2d 1007, 1011 (Ala. 2008) ("[w]hen a mortgage is invalid due to a technical defect, equity will give effect to the intent of the parties according to the substance of the transaction" [internal quotation marks omitted]). It is also well established that "[e]rrors and omissions in the recorded mortgage that would not mislead a title searcher as to the true nature of the secured obligation do not affect the validity of the mortgage against third parties." (Internal quotation marks omitted.) *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 702, 960 A.2d 563 (2008); *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 581, 522 A.2d 763 (1987) ("[F]ailure to state the maximum term of a promissory note . . . does not, of itself, render a mortgage invalid. . . . [A] mortgage need not set forth all of the terms of the underlying obligation provided that it gives notice of the nature and amount of the obligation, so that subsequent lien creditors are not misled." [Citations omitted.]).

In the present case, there is no dispute that the mortgage was properly recorded in the land records, although as between the parties, that is not necessary to its validity. *Wiley* v. *London & Lancashire Fire Ins.*

*Co.*, supra, 89 Conn. 45 ("[t]he deed, when delivered and accepted, is good between the parties, irrespective of the date of its record, and when the title of the grantee is in issue, and the rights of no one are prejudiced by the failure to record, that title is to be determined for all purposes by the fact of title, and not by the record evidence of it"). Thus, although the mortgage contained an inaccuracy by describing the defendant as the "Borrower" and as the maker of the note, this did not undermine the validity of the mortgage between the parties. In this case, the mortgage also provided reasonable notice[6] to any third party that it secured a debt for the amount listed. Moreover, as previously discussed, the references in the mortgage and note to each other demonstrate that they were designed to be part of the same transaction. When read together, the mortgage and the note clearly establish that the consideration for the mortgage was the amount of $533,000 made available by JPMorgan Chase to Robert, approximately $370,000 of which was used to pay off and release encumbrances on the defendant's real property, and the rest for making improvements to the defendant's real property or for Robert's personal use. Accordingly, I conclude that the trial court erred as a matter of law in failing to view the mortgage on the defendant's real property as a valid mortgage, or, more generally, as the defendant's guarantee to answer for any default by Robert pursuant to the terms of the note.

I also conclude that, to the extent it is necessary to consider the equities of this matter, they clearly favor the plaintiff, the successor to JPMorgan Chase. The defendant and Robert clearly benefitted from the $533,000 they received from JPMorgan Chase, and there is nothing in the record to provide the defendant with any equitable or legal defense to the plaintiff's foreclosure of the mortgage.[7]

For the foregoing reasons, I would reverse the judgment and remand the case to the trial court with direction to proceed on the first count of the plaintiff's complaint for foreclosure of the mortgage on the defendant's real property.

[1] As the majority notes in footnote 1 of its opinion, JPMorgan Chase Bank, National Association, is no longer a party in this matter, and M&T Bank filed a motion to substitute itself as the plaintiff.

[2] As noted in footnote 2 of the majority opinion, this action was withdrawn against Robert J. Virgulak, and the state of Connecticut, Department of Revenue Services, was defaulted for failure to plead.

[3] Both the defendant and Robert signed two documents at the closing: (1) the Transfer of Servicing Disclosure Statement, in which both stated that they understood that their acknowledgements were a "required part of the mortgage loan application;" and (2) the Federal Truth in Lending Statement, which contained the following statement: "You are giving a security interest in certain real property located at 14 Bayne Court, Norwalk, CT, 06851."

[4] "Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their

transactions. . . . A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such." (Internal quotation marks omitted.) *Webster Bank* v. *Oakley*, 265 Conn. 539, 547, 830 A.2d 139 (2003), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004); *Sunset Mortgage* v. *Agolio*, 109 Conn. App. 198, 202, 952 A.2d 65 (2008).

[5] As the majority states, "[a] cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other." (Internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 531, 441 A.2d 151 (1981). "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties." (Internal quotation marks omitted.) *Kaplan* v. *Scheer*, 182 Conn. App. 488, 502, 190 A.3d 31, cert. denied, 330 Conn. 913, 193 A.3d 49 (2018),

[6] "Reasonable notice" is defined as "notice of the nature and amount of the encumbrance which the mortgagor intends to place upon the land." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Esposito*, supra, 210 Conn. 228.

[7] Reformation of a document is ordinarily the appropriate equitable remedy in circumstances such as an unknown mutual mistake. See *Lopinto* v. *Haines*, supra, 185 Conn. 532 ("The remedy of reformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . In short, the mistake, being common to both parties, effects a result which neither intended." [Citations omitted; internal quotation marks omitted.]); *Deutsche Bank National Trust Co.* v. *Perez*, 146 Conn. App. 833, 839, 80 A.3d 910 (2013) ("[t]he relief afforded in reforming an instrument is to make it conform to the previous agreement of the parties"), appeal dismissed, 315 Conn. 542, 109 A.3d 452 (2015). I do not write separately on the ground of reformation, however, because the particular factual circumstances of this case do not require reformation of the note or mortgage, given the substance of the transaction created by the defendant and Robert, upon which the plaintiff relied. Simply put, the defendant was aware of the nature and consequences of her transaction with JPMorgan Chase, and an unnecessarily strict adherence to the concept of documentary perfection should not shield her from her resulting obligation to JPMorgan Chase and its successors, into which she knowingly and voluntarily entered.