J. W. Pierson Company, a corporation of New Jersey, complainant-appellant,

*v.*

Elizabeth B. Freeman and Orange Building and Loan Association, a corporation of New Jersey, defendants-respondents.

[Submitted February term, 1933.   Decided May 15th, 1933.]

*Mr. Harry Phillipson,* for the complainant-appellant.

*Mr. William C. Headley,* for the defendant-respondent Elizabeth B. Freeman.

*Mr. W. Bradford Smith,* for the defendant-respondent Orange Building and Loan Association.

The opinion of the court was delivered by

HEHER, J.

On December 8th, 1922, one Lyman G. Rowe was indebted to appellant in the sum of $798.90, for building materials sold and delivered. On that day, by a contract in writing (in the execution of which his wife joined) Rowe agreed, in consideration of the payment of that sum, receipt of which was acknowledged, to convey to appellant, on or before March 8th, 1923, by deed of warranty, subject to two mortgages totaling $4,400, the tract of land described in the bill of complaint. The vendee was granted the right of possession on March 8th, 1923, and it was stipulated that the deed of conveyance should be delivered and received at a designated hour and place on that day. It was further provided that if within ninety days of the making of the contract, the vendors should desire to withdraw therefrom, they might do so upon the repayment to appellant of the consideration price; otherwise the contract was to remain in full force and effect. Rowe did not exercise the option thus granted, nor did he make conveyance of the lands to appellant.

On July 27th, 1932, appellant filed a bill, praying specific performance, or, in the alternative, that the agreement be decreed to be an equitable mortgage, and the lands sold to raise and pay the moneys due thereon. It was therein alleged that on March 8th, 1923, appellant "became entitled by the terms of the aforesaid agreement to a deed of conveyance"

of the lands, and that Rowe and his wife "held legal title to the said premises as trustees for this complainant." On May 1st, 1923, Rowe and his wife conveyed the land to defendant Freeman, and on January 5th, 1931, the latter executed and delivered to the corporate defendant a mortgage thereon to secure the payment of $3,000. The bill alleged that these defendants had notice or knowledge of appellant's agreement, and prayed that it be decreed that the defendant Freeman holds the lands in trust for appellant, and that the mortgage of the building and loan association is void and of no effect. Appellant's accountant testified that, subsequent to the making of the agreement, the sum of $369.09 was paid on account of Rowe's indebtedness, and that at the time of the final hearing the balance due, including interest, was $600.99. Neither the source nor the date of the stated payment on account was proved. This witness testified that Rowe died "within a year or two" of the making of the agreement.

The vice-chancellor held that the agreement was a contract for the sale of lands, and that it was void as to subsequent judgment purchasers and mortgagees for value. He rejected the theory of mortgage. Appellant concedes that if this was an agreement for the sale of land, as distinguished from a mortgage, it is void as to defendants. *2 Comp. Stat. p. 1573.* It now insists that the parties intended by this transaction to pledge the lands as security for a debt, and that the instrument should be treated as an equitable mortgage.

The term "mortgage" has a technical significance in the law. It imports a defeasance and an equity of redemption. The transfer of title must be made to secure the payment of a debt, or the performance of a duty, and the right of redemption must exist in the mortgagor. *Clinton Hill Lumber and Manufacturing Co.* v. *Strieby, 52 N. J. Eq. 576; Wilbur* v. *Jones, 80 N. J. Eq. 520; Peugh* v. *Davis, 96 U. S. 332, 336; 24 L. Ed. 775.*

If a transasction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is, in equity, a mortgage. If a deed or contract, lacking the characteristics of a common law mortgage, is

used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties. Such is an equitable mortgage. *Cummings* v. *Jackson, 55 N. J. Eq. 805, 809; Peugh* v. *Davis, supra.* To prevent undue advantage through inadequacy of consideration, courts of equity are steadfast in holding that a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor conditional sale, but a mortgage, and that the grantor and grantee have merely the rights, and are subject only to the obligations, of the mortgagor and mortgagee. *Mooney* v. *Byrne, 163 N. Y. 86; 57 N. E. Rep. 163.* The character of the instrument is determined by the intention of the parties at the time of its execution. *Frink* v. *Adams, 36 N. J. Eq. 485; Doughty* v. *Miller, 50 N. J. Eq. 529; Guilford-Chester Water Co.* v. *Guilford, 107 Conn. 519; 141 Atl. Rep. 880; 19 R. C. L. 266.* While it is true that it does not require express words to create an equitable mortgage, where the intention to create such a lien is evident, yet it must clearly appear from the instrument or the surrounding circumstances, at the time of entering into the same, that the maker of the instrument intended that the property therein described is to be held, given or transferred as security for the obligation. *Managas* v. *Albertucci, 235 U. S. 81; 35 Sup. Ct. 95; 59 L. Ed. 139; New Orleans National Banking Association* v. *Adams, 109 U. S. 211; 3 Sup. Ct. 161; 27 L. Ed. 910; Hibernian Banking Association* v. *Davis, 295 Ill. 537; 129 N. E. Rep. 540.* An equitable mortgage, therefore, is created by the agreement of the parties.

There is a well defined distinction between a mortgage and a conditional sale. The former is merely security for the payment of a debt, or for the performance of some other condition, while the latter is a purchase of the land for a price paid or to be paid, to become absolute on the occurrence of a particular event, or is a purchase of property accompanied by an agreement to resell to the grantor in a given time, and for a stipulated price. *Managas* v. *Alber-*

*tucci, supra; Kennedy* v. *Sorsby, 209 Ala. 188; 95 So. Rep. 891; Chapman* v. *Ogden, 30 Ill. 515; Mooney* v. *Byrne, supra; Turner* v. *Kerr, 44 Mo. 429.*

The case turns then on the agreement of the parties. Did their minds meet on a mortgage or a conditional sale? Was the debt extinguished by the agreement, or did it continue in existence? As was said in *Mooney* v. *Byrne, supra:* "The continued existence of the debt is the birthmark of a mortgage." An intention to continue the debt in existence does not appear either in the language of the document, or in the circumstances surrounding the transaction. On the contrary, the agreement acknowledged the satisfaction of the indebtedness. The *indicia* of a mortgage are lacking. Rowe was not required to pay interest on the so-called debt. The consideration price for the conveyance was not inadequate. The agreement required the vendee to assume mortgages totaling $4,400. The defendant Freeman purchased the property for $5,400. Furthermore, it is inconceivable that appellant, accustomed as it undoubtedly was to taking security for the payment of obligations such as this, would adopt this most unusual method of fastening a lien upon the debtor's property, rather than the commonly accepted method of creating a lien by mortgage in the usual form. The evidence was scant, and does not persuade the mind that the transaction was other than that expressed in the agreement. This instrument does not profess to be a security. It excludes the concept of mortgage. And such being the case, it is significant that appellant did not show the circumstances attending its execution, nor offer proof of an understanding that, regardless of its form, it was a mere security for the payment of the pre-existing debt. The value of Rowe's equity in the property was approximately that of his indebtedness to appellant, and this, coupled with the form in which the agreement was cast, leads irresistibly to the conclusion that the lands were conveyed in satisfaction of the debt, with an option to repurchase within the time limited. The testimony of the payment to appellant subsequent to the making of the agreement, allegedly on account of the debt existing at the time of its execution, does not lead to a contrary conclusion.

Neither the source, the time, nor the circumstances of this payment was proved. Obviously, this piece of evidence, without more, can have no probative force on an inquiry to ascertain the intention of the parties at the time of the execution of the agreement. For aught that appeared, that payment may have been made under a new and subsequent agreement. The character of the agreement under examination must be determined by the minds of the parties at the time of its execution. If, at the time of its delivery, they intended a conditional sale, no subsequent change of intention can make it a mortgage. *Frink* v. *Adams, supra; Doughty* v. *Miller, supra.*

The fact that there is an agreement to resell the property to the sellor at a fixed price, or that he has an option to repurchase it, does not, of itself, establish that the transaction is a mortgage. In determining whether a contract is a mortgage or a sale with the right of repurchase, a test generally accepted as decisive is "the mutuality and reciprocity of the remedies of the parties; that is to say, if the grantee enjoys a right, reciprocal to that of the grantor, to demand a reconveyance, to compel the latter to pay the consideration named in the stipulation for reconveyance, the transaction is a mortgage, while if he has no such right to compel payment, the transaction is a conditional sale." *Guilford-Chester Water Co.* v. *Guilford, supra.* Courts of equity have no power to substitute a different contract in the place of the one actually made, but will presume that the interest of either party to the contract is expressed in the language thereof. *Hibernian Banking Association* v. *Davis, supra; 41 C. J. 287.* The evidence in the instant case did not overcome the presumption that the transaction was a conditional sale.

Decree affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.