Isabel Carmen Llambías, etc., Plaintiff, Cross-Defendant, and Appellee, *v.* Juan Carlos Pagán, Defendant, Cross-Claimant, and Appellant.

No. 9054. Argued April 6, 1945.—Decided December 4, 1945.

*Pedro E. Anglade* for appellant. *José Veray, Jr.,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

On March 14, 1940, Isabel Carmen Llambías, plaintiff herein, executed before a notary a deed of sale, with right of redemption, which in its pertinent part reads thus:

"Fourth: Doña Isabel Carmen Llambías hereby sells to the other party, Don Juan Carlos Pagán, the property described in the first paragraph of this deed with everything within and annexed thereto. It should be understood that the sale carries with it the conveyance of the title, possession, and other natural and civil accretions to the property conveyed.—Price.—Fifth: The selling price of this property is one thousand five hundred dollars, which amount the vendor, Doña Isabel, acknowledges having received from the purchaser, Señor Pagán, prior to this act, and for which amount she grants to him a true and valid receipt.—Right of Redemption.—Sixth: It is an express condition formally agreed by the parties herein that the sale was effected with the right of redemption for the period of one year, counted from this date; hence, if Doña Isabel Carmen Llambías returns to Don Juan Carlos Pagán the amount received, one thousand five hundred dollars, within the specified period of one year which shall expire on March 14, 1941, the purchaser, Señor Pagán, should and hereby binds himself to execute the corresponding deed of reconveyance, otherwise the sale of the property herein shall be considered as irrevocably effected.—Seventh.—The parties further agree and bind themselves to the following: that during the course of the aforesaid year, which runs from the date of execution of this deed until March 14, 1941, Don Juan Carlos Pagán will be entitled to receive the monthly rentals of the house conveyed."

Three days before the expiration of the year specified in the contract, that is, on March 11, 1941, Isabel Carmen Llambías filed the complaint in this case and prayed for judgment in the following terms: (a) that the deed of sale of the property with right of redemption be declared void because the plaintiff was a minor at the time of its execution; (b) that if the deed is valid the contract executed is a mortgage and not a sale; (c) that defendant should apply to the principal amount of the debt, the rentals of the house which he has been receiving, after deducting interest at the legal rate: and (d) that defendant be ordered to pay $5,000 as

damages. The district court overruled a demurrer for misjoinder of causes of action and, after defendant answered and the evidence of both parties had been introduced, it rendered judgment for plaintiff to the effect that the deed was valid and that the contract referred to was really a mortgage; it granted plaintiff a period of six months—which could not be extended—within which to pay defendant the sum of $1,500 plus interest thereon at the legal rate, and adjudged the latter to pay to the plaintiff the rentals at a monthly rate of $40 beginning on March 15, 1941, together with costs and $250 as attorney's fees. Defendant appealed.

In his first assignment of error appellant contends that the lower court erred in admitting plaintiff's testimony to prove that the contracts executed by the parties was a mortgage and not a sale with right of redemption, thus varying, by means of parol evidence, the terms of a written contract, in violation of § 25 of the Law of Evidence.

We have held in *Monagas* v. *Albertucci*, 17 P.R.R. 684, affirmed in 235 U. S. 81, that parol evidence is admissible to determine whether the true intention of the parties in a sale with right of redemption was to execute such a contract or simply a loan with mortgage security. In said case we stated, at page 686:

"The whole case really turns on the question of whether the written instrument in controversy was a mortgage or a conditional sale. If it is the latter, it must be complied with according to its terms; if the former, the plaintiff must be allowed to repay the money received and take a reconveyance of the land. The real intention of the parties at the time the written instrument was made must govern in the interpretation given to it by the courts. This must be ascertained from the circumstances surrounding the transaction and from the language of the document itself. The correct test, where it can be applied, is the continued existence of a debt or liability between the parties. If such exists, the conveyance may be held to be merely a security for the debt or indemnity against the liability. On the contrary, if no debt or liability is found to exist, then the

transaction is not a mortgage, but merely a sale with a contract of repurchase within a fixed time. While every case depends on its own special facts, certain circumstances are considered as important, and the courts regard them as throwing much light upon the real intent of the parties and upon the nature of such transactions. Such are the existence of a collateral agreement made by the grantor for the payment of money to the grantee, his liability to pay interest, inadequacy of price paid for the conveyance, the grantor still remaining in possession of the land conveyed, and any negotiation or application for a loan made preceding or during the transaction resulting in the conveyance.''

Although it is true that in the above-mentioned case the judgment of the lower court was reversed because it admitted parol evidence relating to a contract of sale with the right of redemption, the *dictum* of said opinion in connection with the inadmissibility of said parol evidence in cases of this nature was made clear by this court in *Ochoteco* v. *Córdova*, 47 P.R.R. 522, where we said, at page 528:

"The appellants find some comfort in *Monagas* v. *Albertucci*, 17 P.R.R. 684. Now, there was a dictum in that opinion which said that parol evidence was inadmissible to show that a contract of sale, with right of redemption, could not be shown to be a mortgage. If, however, the opinion is read with care, it will be seen that this court really decided that there was not enough evidence to show the existence of a mortgage.

"This also appears when one considers the case on appeal to the Supreme Court of the United States, *Monagas* v. *Albertucci*, 235 U.S. 81, 87, where the Court, throught Mr. Justice White, said as follows:

'' 'But when the statement we have made of the case is considered, the proposition rests upon the plainest misconception of the action of the court below since, as we have seen, its conclusion that error had been committed by the trial court in holding that the contract of sale was one of mortgage did not arises from a ruling that there was a want of power to admit any testimony for such purpose, but from the fact that the particular testimony which was offered and received over objections was found after considering and weighing it, to bear no legal relation to such purpose and hence not afford any probative force tending to support the varying of the contract.' ''

In the more recent case of *Nieto* v. *Torres*, 56 P.R.R. 147, where parol evidence had not been admitted to show the real nature of the transaction made—a contract of sale with right of redemption which was really one of mortgage security—upon reversing the judgment we held, citing 2 Jones on Evidence in Civil Cases, 4th ed. (1938), p. 951, § 446, that said evidence was perfectly admissible.

To the same effect see 9 Wigmore on Evidence, § 2437, p. 119; *González Franqui* v. *Brice*, 27 P.R.R. 64; *Monrozeau et al.* v. *Amador et al.*, 40 P.R.R. 124, and the case of *J. W. Pierson Co.* v. *Freeman*, 166 A. 121, 123, where the difference between a conditional sale of property and a mortgage is amply discussed.

In accordance with the doctrine above set forth, we are of the opinion that the district court did not err in admitting plaintiff's testimony. This constituted one of the exceptions to the rule sanctioned by the decisions and said evidence could be admitted without violating the provisions of § 25 of the Law of Evidence.

Now, did the court *a quo* correctly conclude that the contract executed was really a mortgage and not a sale with right of redemption? Let us see the evidence introduced by the parties.

Plaintiff's evidence consisted of her own testimony and that of her mother María Bauzá. Plaintiff testified, in brief, that at the time of the transaction she was a student at the University of Puerto Rico; that in the month of March, 1940, she went to the defendant and asked for a loan of $1.500 in order to buy with that money a house from her uncle Antonio Alcover; that the house was renting for $45 monthly, and that she and the defendant agreed that, since she lived in Río Piedras and the defendant in Lares, the latter should collect the rentals of the house and deduct the interest on the loan, and that he should send the remainder to her at Río Piedras; that she never received said remainder; that she *bought* the house on the same day that

she executed the deed in favor of the defendant for $1,200; that by said deed she mortgaged the house for $1,500 to Juan Carlos Pagán; that previously she had taken several steps in order to obtain money from certain money lenders but had been unable to obtain it; that the second story of the house was leased to the municipal court for $25 and the main floor for $20. In rebuttal she testified that Juan Carlos Pagán *had not accepted the mortgage on the house for $1,200, as suggested to him,* "because if he had to foreclose he would have to pay me $500 for homestead"; that the defendant accepted a reconveyance for $1,500, and that she accepted the transaction "because ultimately it was the same thing"; that on a certain occasion she offered to pay the defendant but the latter did not accept, whereupon she went personally *"to return the $1,500 in order that he should* reconvey the house and that he refused to accept it because he alleged that the house was his"; that on the day the deed was signed, she received from Pagán a check for $1,200 and that she then went to Río Piedras, and that on the following day the defendant gave his uncle a promissory note 'which was to be signed by her mother at Río Piedras; that her mother María Bauzá was not present when the deed was signed, and that she signed the promissory note for $300 at Río Piedras.[1]

María Bauzá testified that the house in question was originally hers and that she had lost it at a tax sale; that her brother-in-law had bought it at a public sale but had consented to sell it to her daughter for $1,200; that she learned of the transaction when her daughter returned from Lares and explained it to her; that she did not approve of it "because the rents were taken away from us"; that she was not present at the execution of the deed; and that she had signed the promissory note at Río Piedras. In rebuttal she testified that she did not know Juan R. Maldonado (the

---

[1] The promissory note for $300 was signed by the defendant alone as debtor. The signature of María Bauzá on the back thereof refers to a deposit of $96.52 which the defendant made to her in the name of the plaintiff.

witness who testified afterwards as having seen her in Lares on March 14, 1940).

Plaintiff's documentary evidence consisted of the birth certificate of Isabel Carmen Llambías and of a certified copy of the deed of sale in favor of Juan Carlos Pagán.

The defendant first presented the original testimony of Salvador Vlella, the notary who certified deed No. 27 on March 14, 1940, it being stipulated by the parties that the testimony of said witness would be exactly the same as the original one. In brief, the witness had testified that at the time of the execution of the deed Juan Carlos Pagán, Antonio Alcover Pol, Isabel Carmen Llambías, *María Bauzá,* and Attorney Obdulio Bauzá appeared in his office; that the latter explained to him the transaction, in the sense that Isabel Llambías was going to buy the house from Antonio Alcover and then sell it to Pagán with the right of redemption for 1 year; that Bauzá presented the deeds already drafted; that the check for $1,200 was delivered by Pagán to María Bauzá on that day in his presence; that on the following day said María Bauzá and Juan Carlos Pagán came to his office; that he gave her $96 in advance and delivered a promissory note for $300 on which he authorized an affidavit; *that at no time did any of the parties speak of a mortgage;* stating that "if they had mentioned the mortgage I would not have certified the deed with the right of redemption even if a colleague had drafted it; no mention of a mortgage was made."

Antonio Alcover Pol testified, in so far as pertinent, that the check for $1.200 with which they paid for the house had been delivered to him on the day of the execution of the deeds at the office of Notary Vilella in the presence of her sister-in-law María Bauzá; that she or Vilella—one of the two—gave him the check; that when María Bauzá explained to him the circumstances under which her daughter was studying, he consented to sell the house; that the house was worth $2,500; that he was not present when Isabel Llam-

bías executed the deed in favor of Pagán; that he presumed that the contract in said deed was a mortgage; that both deeds were drawn up by Obdulio Bauzá, plaintiff's uncle.

Juan R. Maldonado testified that he had spoken to María Bauzá on March 14, 1940, in Lares; that she had offiered to sell him the house on the preceding day and that he had suggested to her to see Pagán; that on the 14th she told him that she had sold the house to Pagán.

Federico Juan Soler testified that he had been previously called by María Bauzá to testify at a hearing in the same case; that on March 14, 1940, he saw said María Bauzá in Lares.

Juan Carlos Pagán, defendant herein, testified that María Bauzá and her daughter, Isabel Carmen Llambías, had gone to him to mortgage the house for $1,200, but that he had refused: ". . . . . I told them that I could not do it, that I would not accept a mortgage, that if they wanted I, could buy the house; and the young lady said: 'Well, mother, that is the same thing,' and then I accepted"; that then they agreed to a sale with a right of redemption for $1,500, although she had asked for $1,800; that at no time did he agree with María Bauzá or with the plaintiff in making a loan; that at no time did he receive any petition for extension or any offer for payment; that Obdulio Bauzá had told him that, since the house belonged to his sister María, it would be better if it were conveyed to Isabel Carmen Llambías and from her to him; that they reached no agreement as to the rentals; that the transaction was made in good faith.

As documentary evidence the defendant offered the certificate of purchase of real property given by the collector when the propetry was awarded to him at a tax sale, deed No. 26 of March 14, 1940, executed by Antonio Alcover Pol and his wife in favor of Isabel Carmen Llambías, a check for $1,200 with which he paid Alcover for the house, and the promissory note for $300 to complete the amount of $1,500 delivered to Miss Llambías by Juan Carlos Pagán.

The lower court stated in its opinion that it "accorded full credit to the testimony of the plaintiff and her witnesses" but that "it did not believe . . . . . the testimony of the defendant . . ." Even though in some details the lower court, inconsistently with this statement, apparently did believe the evidence of the defendant, the principal fact disclosed by the entire evidence is the following: Although defendant denied that plaintiff had offered to pay him the $1,500, object of the contract, before the expiration of the year, the fact is that the complaint in this case was filed on May 11, 1941, that is, three days prior to the expiration of the year specified in the contract. This fact strengthens the evidence which tended to show that it was not a mortgage as decided by the lower court but that she tried to exercise her right of redemption specified in the contract.

Ordinarily this court does not disturb the weighing of the evidence made by the trial court nor its findings of fact based on said evidence. However, the case at bar presents a different situation. When the court decided that the contract in this case was a mortgage and not a sale with the right of redemption, a conclusion of law became involved.

There is quite a similarity between a sale with right of redemption and a mortgage;[2] and within the parole evidence

---

[2] Manresa comments:

"Conventional redemption, or *venta al quitar o a carta de gracia*, by which names it is known, is a form used for a loan contract; but from a judicial viewpoint they are quite distinct. The distinction is manifest upon making a single, observation: in a sale with right of redemption there always exists the convenyance of the title of a thing, even if it should be a revocable title; while in the loan contract, this conveyance does not exist. Both acts are similar in that money is transferred in a loan, that which is lent, in the sale with right of redemption, that which is given as the price; but the conveyance of a specific thing, apart from the money, only exists in a sale contract.

"Notwithstanding this juridicial distinction, it would be entirely puerile to deny that in practice, sales with a right of redemption are really loans that are made *in that manner* the same as if they were made, for example, by constituting a mortgage credit or an antichresis: it is precisely because of this that the use of conventional redemption is so censured, to the extreme that some text writers have decidedly recommended its suppression." *Comentarios al Código Civil*, vol. X, p. 271 (4th ed.)

rule one should specifically determine what was the intention of the parties in making the contract. We are of the opinion that evidence as the one presented by the plaintiff herein, which was weak and contradictory, can not have the effect of destroying the veracity of a deed signed by her. Her own evidence in general, tended to show that at various times she was conscious of the true judicial act which she was about to perform. She tried to mortgage and upon the defendant refusing to do so, she sold the house with the hope of recovering it within the year.

We do not see how the court could have decided that it was really a mortgage. The evidence admitted to explain the transaction did not have the effect of changing, varying, or modifying the contract. This case is not covered by the provisions of § 1410 of the Civil Code[3] which enumerates the cases where the sale of property is presumed to be a mortgage. Neither is this case one where the sale arose as a consequence of a preëxisting obligation. *Monagas v. Albertucci, supra.*

What effect, if any, was operated by the proven fact that plaintiff, before the expiration of the year, offered to pay to the defendant the $1,500 involved in the contract and filed the complaint three days prior to the expiration of said period but varying her cause of action? We believe none which could favor the plaintiff.

This is not a case where the doctrine of election of remedies is applicable, for the latter only applies to the different ways of exercising a right. This is a case where the plaintiff exercised a substantive right different from the one she

---

[3] Section 1410 of the Civil Code reads thus:

"In any of the following cases, sales of real estate on reversion shall be presumed to constitute a contract of loan for the amount of the price, with a mortgage on the property sold, as security:

1. When the buyer fails to enter into material possession of the thing sold.

2. When the vendor pays to the buyer interest on the selling price, though such interest may be called rental or otherwise.

3. When a grossly inadequate sum appears in the contract, as the price of alienation."

really had. In relation to this we find in 18 Am. Jur. 131. Election of Remedies, § 6, the following:

"§ 6.—Election of Substantive Rights.—Often, what is spoken of in judicial opinions as a choice between remedies is in reality a choice of alternative substantive rights. The distinction is one not infrequently obscured, and yet it is important that it is heeded. An election between substantive rights goes, not to the form, but to the substance, affecting some right selected. Whereas an election of remedies or forms of action or procedure does not necessarily involve a choice between existing substantive rights, since a form of action is but a means of administering justice, rather than an end in itself. The doctrine of election of remedies applies in order to protect one from vexatious litigation, while the rule as to election of substantive rights has to do with the actual status of some property or contractual rights. That is to say, a person having the option to fix definitely a property or contractual right without reference to the consent or wishes of the other party to the transaction is bound by his exercise of the option."

This court has held that a remedy appearing from the evidence may be granted when it is compatible with the pleadings and when the conditions to make it operative are present in the suit. Thus, in *Ruiz* v. *Ruiz,* 61 P.R.R. 794, we held that "The fact that the plaintiffs have entitled their action 'revendication of co-ownership and payment of fruits' does not forbid us from deciding that in this case there exists a constructive trust, since this remedy is perfectly compatible with the allegations and the evidence." And in the opinion rendered by Mr. Justice Snyder in *Sosa* v. *Sosa,* 64 P.R.R. 732, quoting from the headnote with which the whole court agreed:

The fact that plaintiffs misconceive the title of their remedy and the Section of the Code applicable thereto is not fatal, where there is a remedy that may be applied and all the requisites thereof are present in the suit."

To the same effect is Rule 81(*b*) of Rules of Civil Procedure, which provides:

"(b) *Errors in the Title or Prayer for Relief.*—Any error in the title of the action brought or in the prayer for relief shall not preclude the court from disregarding the error thus committed and granting the appropriate remedy in accordance with the pleadings and the proof."

The situation in the case at bar, however, is different. We can not grant the plaintiff a remedy to which she is not entitled. The mere fact that she made the offer of payment before the expiration of the year is not equivalent to bringing an action for redemption. There is a fundamental reason for this, and it is that the mere offer of payment does not constitute the exercise of the right of redemption.

Section 1396 of the Civil Code provides that:

"Conventional redemption shall take place when the vendor reserves to himself the right to recover the thing sold, with the obligation to comply with section 1407, and whatever more may have been agreed upon."

And § 1407 in turn provides that:

"The vendor can not exercise the right of redemption without returning to the vendee the price of the sale, and furthermore:

"1. The expenses of the contract and any other legitimate payment made by reason of the sale.

"2. The useful and necessary expenses incurred by the thing sold."

We have held in *González* v. *Acha et al.,* 21 P.R.R. 124, and *Martínez* v. *Pirallo,* 61 P.R.R. 87, that § 1616 of the Law of Civil Procedure for Cuba and Puerto Rico, identical to § 1618 of the Spanish Law of Civil Procedure, which requires the redemptor to deposit in court the amount of the purchase price if known, and, if unknown, to furnish bond to insure such deposit when it becomes known,[4] is in force in this jurisdiction. In the case at bar, since the plaintiff did not deposit in court the $1,500 involved in the contract,

---

[4] See *Comentarios* of Manresa, *op cit.,* pp. 306–309, on this Section in connection with § 1518 of the Spanish Civil Code equivalent to our § 1407, *supra.*

she could not bring the action of legal redemption and we can not consider the one brought as such.

For the reasons stated the judgment rendered by the District Court of Aguadilla must be reversed and another rendered instead dismissing the complaint, with costs but without including attorney's fees.