**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

KUNESCH, IAN M.,

Plaintiff,

v.

ANDOVER TWP.,

Defendant.

TAX COURT OF NEW JERSEY

DOCKET NOs.: 007226-2013; 007942-2014; 003388-2015; 003298-2016; 000657-2017; 000823-2018; 002702-2019

Approved for Publication
In the New Jersey
Tax Court Reports

Dated: July 29, 2021

Jeffery D. Gordon for plaintiff (Archer & Greiner, PC, attorney).

Fred Semrau and Robert J. Rossmeissl for defendant (Dorsey & Semrau, LLC, attorney).

BIANCO, J.T.C.

This shall serve as the court's formal opinion concerning a motion to dismiss for lack of standing brought by defendant, Andover Township ("Township"). The Township initially filed motions for summary judgment, but after hearing arguments, the court, on the record, more accurately characterized them as motions to dismiss for lack of standing. This was not disputed by counsel.

The present matters arise out of several New Jersey Property Tax appeals brought by plaintiff, Ian Kunesch ("Mr. Kunesch"). The Township disputes that Mr. Kunesch is an aggrieved taxpayer within the meaning of N.J.S.A. 54:3-21, given that he executed a deed in lieu of foreclosure to his bank, which stripped him of standing to institute the within tax appeals. For reasons described more fully below, the court concludes that the Township's motions are without

*

merit, and Mr. Kunesch has standing to proceed in each tax appeal. Accordingly, the Township's motions to dismiss are denied.

## PROCEDURAL HISTORY AND FACTS

In 2006, Mr. Kunesch was the owner of certain property designated as Block 73, Lot 6 in Andover Township, New Jersey ("Property"). That same year, he mortgaged the Property with Sussex Bank ("Bank") as security for a commercial loan. On March 30, 2009, Mr. Kunesch entered into various agreements with the Bank that included a Note, Mortgage, and Mortgage Modification Agreement ("Agreement 1") that modified the prior agreement from 2006. Along with these agreements, Mr. Kunesch provided the Bank a Deed in Lieu of Foreclosure ("1st Deed in Lieu") at the time of signing with the intent that, in the event he defaulted on payment, the Bank could take title to the Property by recording the Deed in Lieu of Foreclosure without having to go through the process of a foreclosure. Under Agreement 1, Mr. Kunesch would make monthly payments to the Bank that would be comprised of principal, interest, and tax escrow which was to be used for the payment of real estate taxes. In other words, Mr. Kunesch would make his tax payments on the Property to the Bank which escrowed his payments and the Bank then paid those taxes on his behalf to the Township when due.

In 2011, Mr. Kunesch entered into another Mortgage Modification Agreement ("Agreement 2") with the Bank and again used the Property as collateral. Like Agreement 1, Mr. Kunesch executed a second Deed in Lieu of Foreclosure ("2nd Deed in Lieu") similar to the first. The intent of Agreement 2 and the 2nd Deed in Lieu is disputed by the Township. The Township asserts that "the 2011 Deed in Lieu was valid and operative against Plaintiff, a mortgagor, as of the date it was executed and notarized: March 9, 2011." However, Mr. Kunesch asserts he entered into Agreement 2 and the 2nd Deed in Lieu with the understanding that the Bank would have

2

security for its loan, and Mr. Kunesch would continue to own the Property until he defaulted. It was his further understanding that the portions of Agreement 1 that were not modified by Agreement 2 would remain in effect, and that the only way the Bank would be able to obtain ownership of the Property was if he defaulted on the loan. If he defaulted, Mr. Kunesch was then given 90 days to resolve the issue, and if unable to do so, the Bank would record the deed and take ownership without needing to go through a foreclosure action.

From 2011-2019, Mr. Kunesch maintained and operated the Property as a golf course. He was also listed as the owner of the Property on the Township's records and applied for various permits related to the Property, which were granted. Mr. Kunesch filed local property tax appeals for the years 2013-2019. In 2019, Mr. Kunesch defaulted on his mortgage payments. Consequently, the Bank recorded the 2nd Deed in Lieu on April 5, 2019.

Mr. Kunesch filed for Chapter 7 bankruptcy in May of 2019. His bankruptcy petition did not list the 2013-2019 local property tax appeals as an asset on his list of assets and claims. His stated reason for the omission was because he did not realize that he was supposed to list the tax appeals in the bankruptcy filing with his list of assets. Furthermore, when asked if anyone owed him money at Mr. Kunesch's 341 Meeting of Creditors ("341 Meeting")[1], Mr. Kunesch testified that everything he owned and owed was included in the petition and that no one owed him money. The Bankruptcy Court issued its Order on August 30, 2019 discharging $1,177,215.19 of Mr. Kunesch's debts, and as of September 6, 2019, the bankruptcy matter was closed. Mr. Kunesch then realized his omission of the 2013-2019 local property tax appeals from his bankruptcy petition

---

[1] A 341 Meeting is mandated by Section 341 of the federal Bankruptcy Code. The meeting permits the bankruptcy trustee to review the debtor's petition and schedules with the debtor, and then requires the debtor to answer questions under penalty of perjury about the debtor's conduct, property, liabilities, financial condition, and any other matter that may affect the administration of the case or the debtor's right to discharge. See 11 U.S.C. § 341 (2018).

after the fact and notified his bankruptcy attorney who then informed the Bankruptcy Trustee ("Trustee") of the omission. The Trustee investigated the matter and decided not to reopen the bankruptcy proceeding to administer the tax appeals as an asset.

The Township filed its motions for summary judgment in March of 2021 on the basis that Mr. Kunesch did not have standing as an aggrieved taxpayer to bring the appeals. The court subsequently heard oral arguments after which the court stated on the record that the motions were more accurately characterized as motions to dismiss for lack of standing and would enter its decision accordingly.

## APPLICABLE LAW

### I.      Standing

An aggrieved taxpayer within the meaning of N.J.S.A. 54:3-21 has standing to file a tax appeal. "There is no question that an owner can challenge the local property assessment on his, her, or its property." Savage Mills Enters v. Borough of Little Silver, 29 N.J. Tax 295, 303 (2016) (referencing N.J.S.A. 54:3-21). "The sole owner of a property in fee simple who pays the entirety of the property taxes is clearly an aggrieved taxpayer pursuant to the statute." Prime Accounting Dept. v. Township of Carney's Point, 212 N.J. 493, 506 (2013) (citing N.J.S.A. 54:4-23; 54:3-21). It is also well settled "that one need not be the owner of real property to be an aggrieved taxpayer." B&D Assoc. v Township of Franklin, 32 N.J. Tax 81, 86 (2020). Rather, the plaintiff must "have a sufficient financial interest affected by the challenged assessment in order to have standing to file a complaint." Ibid. It is of note that an aggrieved taxpayer "is a status designated for the purpose of expanding or extending an affected litigants' rights beyond just the property owner." Id. at 89 (emphasis added). The designation was not created to exclude the actual property owner

from his or her right to appeal, regardless of whether the property owner directly or indirectly paid the property taxes.

## II. Transfer of Property Ownership

"Ownership of real property is transferred by deed." N.J.S.A. 46:3-13. The transfer of a real property interest by deed is complete only upon execution and delivery of the deed by the grantor, and acceptance of the deed by the grantee. See In re Estate of Lillis, 123 N.J. Super. 280, 285 (App. Div. 1973). "In other words, a deed transfers a property interest 'upon delivery.'" H.K. v. State, 184 N.J. 367, 382 (2005) (citing Tobar Constr. Co. v. R.C.P. Assocs., 293 N.J. Super. 409, 413 (App. Div. 1996). "Whether delivery and acceptance have taken place . . . is a matter of intention." Dautel Builders v. Borough of Franklin, 11 N.J. Tax 353, 357 (1990). "If there is a physical delivery without the requisite intent that the deed be presently effective as a conveyance of the grantor's title, there is, in legal contemplation, no delivery." Ibid (emphasis added). "Delivery can be shown by '[a]nything that clearly manifests the grantor's intention that the deed become immediately operative and that the grantee become the owner of the estate purportedly conveyed." H.K., 184 N.J. at 382 (quoting Dautel Builders, 11 N.J. Tax at 357). In other words, the transfer of a property interest is dependent on the efficacious delivery and acceptance of a deed, and because delivery is based on the intent of the grantor and grantee, the deed does not need to be recorded in order to pass title if it is what the parties intended.

## III. Deed in Lieu of Foreclosure

"A deed in lieu of foreclosure is a contractual undertaking by the mortgagor and the mortgagee which avoids the formal foreclosure procedure and accordingly is not governed by the foreclosure statutes." New Jersey Hotel Holdings, Inc. v. Dir. Div. of Taxation, 15 N.J. Tax 428, 434 (1996). It operates similar to a traditional deed and is effective between the grantor and grantee

although void against subsequent judgment creditors. See Lieberman v. Arzee Mid-State Supply Corp., 306 N.J. Super. 335, 341 (App. Div. 1997). It is defined as "a voluntary, knowing and uncoerced conveyance by the residential mortgage debtor to the residential mortgage lender of all claim, interest and estate in the property subject to the mortgage." N.J.S.A. 2A:50-55. "[T]he mortgagor's ordinary expectation in giving a deed in lieu of foreclosure (unless otherwise provided for by agreement) is that the mortgagee is taking the deed in satisfaction of the debt and to save the expenses of a judicial foreclosure." 29 New Jersey Practice, Law of Mortgages § 13.14, at 971 (Myron C. Weinstein) (2d ed. 2001) (emphasis added). Meaning, all rights in the property are supposed to transfer to the mortgage lender at the time the deed in lieu of foreclosure is executed, unless otherwise provided for by agreement between the parties.

Although at times advantageous, because a deed in lieu of foreclosure is so agreement-based, it lends itself to risk. For example, a deed in lieu of foreclosure can be recharacterized as an equitable mortgage instead of a true conveyance of title. The equitable mortgage doctrine has been long recognized by New Jersey courts of equity and stands for the principle that "a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor conditional sale, but a mortgage, and that the grantor and grantee have merely the rights, and are subject only to the obligations, of the mortgagor and mortgagee." J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268, 271 (E. & A. 1933). "Courts apply principles of equity to 'look beyond the plain terms' of an agreement between the parties, and thereby determine whether the agreement is in effect a mortgage." Zaman v. Felton, 219 N.J. 199, 217 (2014) (citing Johnson v. NovaStar Mortg., Inc., 698 F. Supp. 2d 463, 468 (D.N.J. 2010)). The name of the instrument itself is not material, and instead, the analysis focuses on the intention of the parties. See J.W. Pierson, 113 N.J. Eq. at 270-71 ("If a deed or contract, lacking the characteristics of a common law mortgage,

6

is used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties."). If the transaction is recharacterized as an equitable mortgage, the transferee lacks indefeasible title to the property, and the transferor retains his or her equity of redemption. See id. at 270.

New Jersey's Supreme Court has adopted these principles and the eight-factor framework articulated by O'Brien v. Cleveland. 423 B.R. 477, 491 (Bankr. D.N.J. 2010). See Zaman, 219 N.J. at 218 (adopting the Federal District Court ruling and analysis of O'Brien from Johnson v. NovaStar Mortg., Inc., 698 F. Supp. 2d 463, 468 (D.N.J. 2010)). In determining whether a transaction gives rise to an equitable mortgage, the O'Brien framework asks judges to consider and then weigh together:

> (1) Statements by the homeowner or representations by the purchaser indicating an intention that the homeowner continue ownership; (2) A substantial disparity between the value received by the homeowner and the actual value of the property; (3) Existence of an option to repurchase; (4) The homeowner's continued possession of the property; (5) The homeowner's continuing duty to bear ownership responsibilities, such as paying real estate taxes or performing property maintenance; (6) Disparity in bargaining power and sophistication, including the homeowner's lack of representation by counsel; (7) Evidence showing an irregular purchase process, including the fact that the property was not listed for sale or that the parties did not conduct an appraisal or investigate title; (8) Financial distress of the homeowner, including the imminence of foreclosure and prior unsuccessful attempts to obtain loans.
>
> [Zaman, 219 N.J. at 218.]

After weighing all of these factors together, along with the intention of the parties, the court may then decide whether the deed in lieu of foreclosure is more accurately characterized as an equitable mortgage. The court must also be mindful of the directive prescribed by New Jersey's law of equitable mortgage, to look at substance over form. See Zaman, 219 N.J. at 216; see also Humble

7

Oil & Ref. Co. v. Doerr, 123 N.J. Super. 530, 551 (Ch. Div. 1973). "The O'Brien factors are meant as guidance for a court and need not all be present for the court to find an equitable mortgage," but all must be analyzed and then weighed together with the understanding that some factors will be given more weight than others. Reibman v. Myers, 451 N.J. Super. 32, 50 (App. Div. 2017).

## IV. Judicial Estoppel

"The doctrine of judicial estoppel operates to 'bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted.'" Cummings v. Bahr, 295 N.J. Super. 374, 385 (App. Div. 1996) (quoting N.M. v. J.G., 255 N.J. Super. 423, 429 (App. Div. 1992)). The court in Cummings explained that "judicial estoppel most often arises when a party takes inconsistent positions in different litigation." Ibid. Essentially, it helps prevent manipulation of the judicial process. "A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding." Kimball Int'l, Inc. v. Northfield Metal Products, 334 N.J. Super. 596, 606 (App. Div. 2000). "[T]o be estopped [a party must] have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained." Id. at 606-07 (quoting In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1987)). It should also be noted that "judicial estoppel is an extraordinary remedy, which should be invoked only when a party's inconsistent behavior will otherwise result in a miscarriage of justice." Id. at 608 (citations and internal quotation marks omitted). "Thus, as with other claim and issue preclusion doctrines, judicial estoppel should be invoked only in those circumstances required to serve its stated purpose, which is to protect the integrity of the judicial process." Ibid.

## ANALYSIS

The Township's argument can be summarized to two points: (1) that Mr. Kunesch does not have standing to bring his complaints because he was not the owner of the Property for the years in question, and therefore, not an aggrieved taxpayer; and (2) even if Mr. Kunesch might have standing, he is judicially estopped from bringing these claims due to inconsistent statements made in his bankruptcy filing. The court finds that neither of the Township's arguments have merit.

**I. Ownership of the Property**

Ownership of the Property is of critical importance in these matters. If Mr. Kunesch was the owner of the Property for the years in question, he is an aggrieved taxpayer pursuant to N.J.S.A. 54:3-21, and therefore, has standing to bring these tax appeals. See Prime Accounting Dept., 212 N.J. at 506. As noted above, the status of an aggrieved taxpayer was not created to exclude actual property owners from his or her right to appeal. The court is satisfied that Mr. Kunesch was the owner of the Property for the years in question and maintains his right to appeal.

The Township argues that Mr. Kunesch neither owned nor paid taxes in connection with the Property for any of the tax years at issue, and that he ceased being the owner of the Property when he granted ownership of it to the Bank by the 2nd Deed in Lieu in conjunction with the execution of Agreement 2 on March 9, 2011. The Township maintains that there was no evidence that the portions of Agreement 1 that were not modified by Agreement 2 survived. The focus of its argument is on the provision granting the Bank the ability to obtain ownership of the Property *only* after Mr. Kunesch defaulted on the loan. While explicitly written in Agreement 1, the provision was not written in Agreement 2; however, the provision was also not modified by Agreement 2. Mr. Kunesch asserts that the parties intended for all portions of Agreement 1 *not* modified by Agreement 2 to remain in full force and effect. This is critical because if the portions

9

of Agreement 1 not modified by Agreement 2 survived, the Bank would only be able to obtain ownership of the Property if Mr. Kunesch defaulted on the loan rather than when the 2nd Deed in Lieu and Agreement 2 were executed. The key issues here are (a) the intent of the parties when they entered into Agreement 2, and (b) the characterization of the 2nd Deed in Lieu as an effective transfer of the title to the Property to the Bank, or simply an equitable mortgage.

### a. Intent of the Parties

The court is satisfied that there was no delivery of the 2nd Deed in Lieu because it was not intended to be presently effective, but rather, it was only intended to be effective upon the occurrence of a later condition. "If there is a physical delivery without the requisite intent that the deed be <u>presently effective</u> as a conveyance of the grantor's title, there is, in legal contemplation, no delivery." <u>Dautel Builders</u>, 11 N.J. Tax at 357 (emphasis added). Here, the court finds that the parties intended that the 2nd Deed in Lieu only be effective upon recording after default, and not presently effective. Accordingly, delivery did not take place until the default occurred *and* the Bank recorded the 2nd Deed in Lieu in 2019.

The Township concedes that while this might be the case for Agreement 1, with which there was a side agreement accompanying the 1st Deed in Lieu specifically stating that ownership would not transfer until default and the subsequent recording of that deed, there was no such side agreement that accompanied Agreement 2 and the 2nd Deed in Lieu. The court is not persuaded by this argument based on the circumstances surrounding Agreement 2, the actions of the parties, and the intentions of the parties as set forth in their certifications. While it is true that deeds may transfer title even if unrecorded, the transfer is still dependent on the intent of the parties in order for the delivery of that title to take place. See <u>H.K.</u>, 184 N.J. at 382. The court finds no clear intention here that title to the Property was to pass upon the execution of Agreement 2. However,

10

it is clear to the court based upon the actions of the parties, that the arrangement whereby Mr. Kunesch would continue to own, maintain, and operate the Property as a golf course, as provided for in Agreement 1, continued after the parties entered into Agreement 2 and executed the 2nd Deed in Lieu. The court arrives at this conclusion because Mr. Kunesch was still listed as the owner of the Property in the Township's records, he applied for various permits related to the Property which were granted, and he paid taxes into an escrow account which the Bank later paid to the Township when due. Finally, it was only upon Mr. Kunesch's default that the Bank recorded the 2nd Deed in Lieu, specifically as provided for in the side agreement to Agreement 1. Moreover, the Bank's Senior Vice-President and Chief Credit Officer ("Bank Officer") certified that it was the intention of Agreements 1 and 2 that the Bank "have security for its loan under this mortgage arrangement where Ian Kunesch continued to own the Property." The Bank Officer further certified that "[t]he intent of the [2nd Deed in Lieu] was to provide Sussex Bank with the ability to obtain ownership of the Property *only* upon the recording of the Deed in Lieu of Forclosure*, if and only if* Ian Kunesch first defaulted on the loan agreement . . .," and that "[t]he parties intended that ownership of the Property *would be retained by Ian Kunesch until the recording of the [2nd Deed in Lieu]*." (emphasis added).

The expressed intent of the parties for entering Agreements 1 and 2 support the conclusion that delivery of the 2nd Deed in Lieu did not take place until April 5, 2019, after Mr. Kunesch defaulted, and the 2nd Deed in Lieu was recorded in accord with the surviving provisions of Agreement 1. Therefore, the court finds that based on the record, certifications, and actions of the parties, the side agreement to Agreement 1 remained in full force and effect even though it was not explicitly written again to accompany Agreement 2 and the 2nd Deed in Lieu. Accordingly, title did not transfer until the default and subsequent recording of the 2nd Deed in Lieu occurred,

11

leaving Mr. Kunesch the owner of the Property and an aggrieved taxpayer for the years at issue before this court.

### b. Deed in Lieu of Foreclosure vs. Equitable Mortgage

This is a novel issue for the Tax Court.[2] It has not been addressed before in the context of a tax appeal and the status of an aggrieved taxpayer who executed a deed in lieu of foreclosure. Accordingly, the court is constrained to discern whether the 2nd Deed in Lieu in these matters is more appropriately an equitable mortgage secured by a deed to the Property.

New Jersey's Supreme Court adopted the principles of the equitable mortgage doctrine and the O'Brien framework in Zaman in order to assist judges in determining whether a transaction gives rise to an equitable mortgage. Under this framework, the court must analyze the substance of the transaction itself, the circumstances that motivated the parties, and indications that both parties intended for the transferor to retain ownership of the property. See ibid. The framework serves merely as a guide, but the court is asked to consider each factor in its analysis. Moreover, not all factors need be present or weigh in favor of finding an equitable mortgage. The intention of the parties, and which party actually maintains possession and ownership of the property, are paramount in determining whether the 2nd Deed in Lieu is more accurately characterized as an equitable mortgage. See J.W. Pierson, 113 N.J. Eq. at 270-71; see also Reibman, 451 N.J. Super. at 50. In its analysis, the court is guided by the New Jersey law of equitable mortgage to look at substance over form and whether or not Mr. Kunesch remained the owner of the Property. See Zaman, 219 N.J. at 216; see also Humble Oil, 123 N.J. Super. at 551.

---

[2] Courts in New Jersey have recognized other transactions, such as sale-leaseback arrangements made to avoid foreclosure and simple land sales, as equitable mortgages when the transaction is actually a mortgage loan secured by a deed to the subject property. See Zaman 219 N.J. at 217; see also James Talcott, Inc. v. Roto Am. Corp., 123 N.J. Super. 183, 202 (Ch. Div. 1973).

The first factor addresses statements or representations made that indicate the owner would continue ownership. It is clear to the court under the present facts that Mr. Kunesch was to remain the owner of the Property until he defaulted, only after which the Bank would record the 2nd Deed in Lieu. Mr. Kunesch maintained and operated the Property as a golf course, was listed as property record owner in the Township's records, applied for various permits related to the Property, and was granted these permits until 2019. These actions make it clear to the court that Mr. Kunesch defaulting was the key condition for the Bank to take ownership of the Property. Until that event occurred, the parties intended that Mr. Kunesch would continue to own and operate the Property. Because the intention of the parties is given more weight in this analysis, and because it was clearly intended that Mr. Kunesch remain the owner of the Property until default, and he effectively remained the owner of the Property for the years in question, this first factor weighs in favor of finding that the 2nd Deed in Lieu is more appropriately, an equitable mortgage.

The second factor looks to a substantial disparity between the value received by the owner and the actual value of the property. While Mr. Kunesch alleges that there is a large disparity in the value of the property, which is the reason for the present tax appeals, this claim alone is not persuasive as to whether the 2nd Deed in Lieu was actually an equitable mortgage. The second factor is more properly intended for instances of disguised sales and is of little relevance here.

The third factor questions the existence of an option to repurchase. It is similar to the second factor in terms of relevance in the present matters and is also intended to be analyzed in the case of disguised sales. In the present matters, there was never an option to repurchase presented because Mr. Kunesch believed he owned the Property until default.

The fourth factor addresses the owner's continued possession of the property. Mr. Kunesch continued to possess and control the Property until April 5, 2019. Much like ownership, possession

13

is of great importance in this analysis because it illustrates the intention of the parties. Moreover, it is actually suggested that lenders should never leave any indication that a borrower will retain ownership or possession of the property when executing a deed in lieu of foreclosure, and in fact, the documentation for the transaction should indicate that no rights of ownership, possession of the subject property, or purchase option will exist upon closing.[3] In his certification, the Bank's Officer made it clear that Mr. Kunesch was to remain the owner and in possession of the Property until he defaulted, as was agreed by the parties. Therefore, this fourth factor also weighs in favor of finding that the 2nd Deed in Lieu is more appropriately an equitable mortgage because Mr. Kunesch, and not the Bank, continued to possess the Property until the title was recorded.

The fifth factor looks to the owner continuing to bear ownership responsibilities like paying real estate taxes or performing property maintenance. This factor also weighs in favor of finding an equitable mortgage. Mr. Kunesch continued to pay property taxes on the Property through the escrow arrangement with the Bank, and paid maintenance expenses for the Property's upkeep throughout the tax years in question. This fifth factor further illustrates that the Bank never intended to maintain or bear any sort of ownership responsibilities of the Property until Mr. Kunesch defaulted and the 2nd Deed in Lieu was recorded.

The sixth factor addresses uneven bargaining power and whether the property owner had legal representation. Mr. Kunesch had an attorney for Agreement 1, but not for Agreement 2. The court is satisfied that Mr. Kunesch was at no disadvantage for either of the Agreements as there is no evidence of uneven bargaining power, deception, or heavy-handedness on the Bank's behalf.

---

[3] See Clint Kakstys & Gillian Kotlen, Deed in Lieu of Foreclosure or Equitable Mortgage? Pitfalls for Lenders to Avoid, New Jersey L. J. (July 29, 2020) available at https://www.law.com/njlawjournal/2020/07/29/deed-in-lieu-of-foreclosure-or-equitable-mortgage-pitfalls-that-lenders-should-avoid (providing advice to lenders and borrowers on deeds in lieu of foreclosure).

The lack of legal representation for Agreement 2 may merely explain why a second side agreement did not explicitly accompany Agreement 2 like with Agreement 1. Accordingly, this sixth factor also weighs in favor of finding an equitable mortgage even though it is not as definitive on the issue as the factors pertaining to ownership or possession of the Property.

The seventh factor addresses an irregular purchase process. This factor is irrelevant in these matters and is once again meant for those instances of disguised sales. Agreements 1 and 2 simply restructured the mortgage and allowed the Bank to have security for its loan while Mr. Kunesch remained in possession of the Property for the years in question.

The eighth factor looks to financial distress of the owner, the imminence of foreclosure, and prior unsuccessful attempts to obtain loans. Mr. Kunesch asserts he was not in financial distress when entering into Agreement 1 or Agreement 2. There is also nothing on the record that suggests he was in financial distress when either agreement was executed, nor was there any evidence he was ever denied a loan. It was not until 2019 when Mr. Kunesch was clearly in financial distress, demonstrated by filing a Chapter 7 bankruptcy proceeding, eight years after Agreement 2 was signed and the 2nd Deed in Lieu was executed. The mere signing of the 2nd Deed in Lieu in connection with Agreement 2, does not, in and of itself, suggest that Mr. Kunesch was in financial distress at the time Agreement 2 was entered into. There is clearly nothing in the record to suggest otherwise.[4] Rather, the court is satisfied that at the time of the execution of Agreements 1 and 2, Mr. Kunesch simply needed a loan and did not contemplate foreclosure or

---

[4] It is suggested that lenders should not consider accepting a deed in lieu of foreclosure before there is a default under the mortgage. At least some degree of financial distress and the imminent threat of foreclosure should exist in a deed in lieu of foreclosure transaction. See Kakstys & Kotlen, Deed in Lieu of Foreclosure or Equitable Mortgage? Pitfalls for Lenders to Avoid, New Jersey L.J. (July 29, 2020).

default. Both Deeds in Lieu were entered into merely so that the Bank could have security for the loan provided to Mr. Kunesch, enabling him to refinance, nothing more. Accordingly, the court finds that Mr. Kunesch was not in financial distress at the time he executed either Deed in Lieu, and only did so to secure a loan, and supports a finding that the 2nd Deed in Lieu was actually an equitable mortgage.

The above analysis leads the court to conclude that the 2nd Deed in Lieu, paired with Agreements 1 and 2, is in fact an equitable mortgage. The factors considered together weigh in support of the finding that the Bank merely used the Property to serve as collateral for a loan while Mr. Kunesch maintained ownership over the Property. This was the clear intention of the parties when entering into the Agreements 1 and 2, evidenced by the parties' actions and the agreements themselves. Accordingly, because the 2nd Deed in Lieu was actually an equitable mortgage, Mr. Kunesch remained the owner of the Property for the years in question, and therefore, has standing to bring these appeals.

## II. Judicial Estoppel

The Township also argues that Mr. Kunesch is barred from prosecuting these tax appeals because of the doctrine of judicial estoppel as it relates to Mr. Kunesch's Chapter 7 bankruptcy proceeding. In the present matters, Mr. Kunesch asserts that he is entitled to a tax refund for each tax year at issue. However, in his bankruptcy filing, he omitted the potential tax appeals refund from his list of assets and denied any money was owed to him at his 341 Meeting. According to the Township, these positions are inconsistent and are barred under judicial estoppel.

The court rejects this argument. "[T]o be estopped [a party must] have convinced the court to accept its position in the earlier litigation." Kimball Int'l, 334 N.J. Super. at 606-07. In this matter, Mr. Kunesch immediately contacted the Trustee when he realized his inadvertent omission,

16

and the Trustee determined not to reopen the bankruptcy proceeding to administer the tax appeals as an asset. Decisions of the Trustee are neither before, nor within the jurisdiction of, this court. By deciding not to act, the Trustee was clearly satisfied with Mr. Kunesch's explanation and saw no issue with the New Jersey Tax Court proceeding with the determination of his pending tax appeals.

As noted above, judicial estoppel is a remedy which must be sparingly used. Given the Trustee's determination to not pursue the issue when these appeals were brought to the attention of the Bankruptcy Court, this court fails to see how proceeding with these matters would be "a miscarriage of justice." Accordingly, Mr. Kunesch is not barred from prosecuting these tax appeals based on the doctrine of judicial estoppel.

## CONCLUSION

For all the foregoing reasons, the Township's motions to dismiss for lack of standing are denied. Mr. Kunesch has standing to proceed as an aggrieved taxpayer within the meaning of N.J.S.A. 54:3-21 and may bring these appeals as the owner of the Property for the tax years in question. Both Mr. Kunesch and the Bank intended for Mr. Kunesch to remain the owner and in possession of the Property unless he defaulted, at which point the 2nd Deed in Lieu would be recorded. Furthermore, the 2nd Deed in Lieu is more appropriately characterized as an equitable mortgage because it was in essence security for a loan. Finally, Mr. Kunesch is not barred from bringing these tax appeals based on the doctrine of judicial estoppel. The court's order denying the Township's motion shall be uploaded to eCourts.